790 A.2d 703

Beverly POTTS

v.

Robert F. POTTS.

No. 2833, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Feb. 1, 2002.

Kimberly Fleming (Laura V. Bearsch and Love, Fleming, Bearsch & Attanasio, LLC on the brief), Bel Air, for appellant.

Paula J. Darrah (Warfield, Meredith & Darrah, P.C. on the brief), Severna Park, for appellee.

Argued before SALMON, KENNEY, and KRAUSER, JJ.

KENNEY, Judge.

This case arises from the entry of a Qualified Domestic Relations Order ("QDRO") by the Circuit Court for Anne Arundel County after the issuance of a judgment of absolute divorce ending the marriage of appellant Beverly Potts ("Wife"), and appellee, Robert F. Potts ("Husband"). Wife raises two questions on appeal:

    I. Did the lower court err in denying the appellant survivor benefits under the applicable qualified domestic relations order notwithstanding the award to appellant of one-half of the marital portion of appellee's pension?

    II. Did the lower court err in determining that if the appellee remarries, he may give survivor benefits to his new spouse, even if that action reduces appellant's share of appellee's pension?

We find no error in the court's decision to deny Wife survivor benefits. To the extent that the trial court held that Husband could reduce Wife's share of the pension by giving survivor benefits to someone other than Wife, the trial court erred. The value of the pension in this case is to be determined prior to any election of survivor benefits for the benefit of a third party. The cost of such election shall not reduce Wife's share of the pension.

## FACTUAL BACKGROUND

Husband and Wife were married on May 5, 1973. Their two children were emancipated by age when Wife filed for divorce on July 14, 1999. Husband filed a counter-complaint for divorce on August 11, 1999. A hearing was held on June 12–14, 1999, and, on June 28, 2000, the court granted a judgment of absolute divorce. The judgment of absolute divorce contained, among other provisions, an order "that the husband's pension is divided on an if, as and when basis, and the 401K is to be divided equally, counsel to ascertain the proper amount." No mention was made by the court in either the judgment of absolute divorce or by the parties in the transcript of the divorce proceedings provided to us of the need to prepare a

QDRO.[1] At this point, the docket entries reflected that the case was "closed," although it was reopened when Husband filed a motion to alter and amend with respect to the court's ruling on the division of the parties' personal property.

In addition to the issue raised by Husband's motion to alter and amend, a problem was developing with respect to a QDRO. Wife's attorney prepared a proposed QDRO, but Husband balked over language that would require him to elect survivor benefits when he drew his pension and to name Wife as "surviving spouse." The parties returned to court for a hearing on January 26, 2001. The court issued its opinion on the QDRO on February 5, 2001, amending that opinion on February 12, 2001, to correct the dates of the hearing and the judgment of divorce. The amended opinion states:

This case raises important questions concerning QDROs.

We heard the matter on June 12, 2000 and granted the divorce on June 27, 2000. We awarded one-half of the marital portion of the QDRO to Ms. Potts, which was what she asked for.

There have been many disputes over the QDROs, which now come down to two points. The first one is whether we can award survivor benefits under the regular "QDRO" to Ms. Potts. She never asked for the benefit by name when the divorce was pending, nor was any motion to that effect filed while the divorce was not final.

Her present counsel argues that an award of one-half of the marital portion of the pension is broad enough to cover survivor benefits. In other words, Mr. Potts wants it excluded because she didn't ask for it, and she wants it included because we didn't deny it.

At first blush the answer seems easy; if you didn't ask for it, you don't get it. However, our research has turned up only one state that has ruled on the matter, namely Texas.

---

1. We were only provided with a copy of closing arguments to the divorce proceedings.

In *Harvey v. Harvey,* 905 S.W.2d 760, the Court of Appeals indicated:

We construe Gary's first point of error to assert that as a matter of law the parties' intent reflected in the original decree was *not* to grant Patricia survivor benefits. We disagree with this assertion. Although the original decree did not specifically mention "survivor benefits", it did expressly recognize Patricia's marital rights in the 3–M pension plan, awarded Patricia "45 per cent of the present value of [Gary's] accrued benefits", and state that Patricia "may elect any form of payment of her portion of the available benefits." n4 [2] In the absence of evidence that the 3–M plan treated survivor benefits as being separate and distinct from "retirement benefits", and in the absence of any evidence of the parties['] intentions in that regard, we conclude that Gary has not demonstrated as a matter of law that the parties intended for the decree granting Patricia forty-five per cent of Gary's "retirement benefits" to exclude survivor benefits from that grant. Point of error is overruled.

In Maryland, survivor benefits are not a matter of right but of the discretion of the Court, *Matthews v. Matthews,* 331[336] Md. 241[, 647 A.2d 812]. The Court has discretion in determining the formula to be used, *Caldwell v. Caldwell,* 103 Md.[App.] 452[, 653 A.2d 994], and can determine who pays for the benefit. All of this indicates that survivor benefits are not an automatic tag-along to the division of the pension, but must be the subject of a request. We disagree with the Texas Court.

It is little secret that the developing field of QDROs, and like orders is causing much difficulty. A QDRO is asked for, or agreed upon, and the details are not ironed out until the order for divorce is final, and any change is difficult, but not impossible. For this reason we are seriously considering raising the question of survivor benefits sua sponte in the future.

---

**2.** Footnote four does not appear as part of this quotation.

The second issue is whether Mr. Potts can, if he remarries, give survivor benefits to his new wife which will have the effect of reducing his first wife's share somewhat.[3]

This is an "if, as and when" pension. We do not believe Ms. Potts has any right to a specific number, only a share of the amount of the pensions actually received. Again, the parties are free to contract for this result.

Counsel shall submit an appropriate QDRO in line with this opinion.

Wife appealed this order on February 28, 2001. On March 12, 2001, the trial court signed and filed the QDRO. Along with the QDRO, it sent a note commenting that "Mrs. Potts filed an appeal. This may very well have been premature." Mrs. Potts then timely appealed the QDRO on April 10, 2001.

## DISCUSSION

### *I.*

Wife's first argues that the issue of survivor benefits is part of the overall inquiry into pensions. Consequently, she argues, the court erred by stating that survivor benefits "are not an automatic tag-along to the division of the pension, but must be the subject of a request." Husband argues that Wife should have raised this issue in an appeal from the judgment of absolute divorce, which he argues was a final judgment. At oral argument, Wife responded to this argument by encouraging us to hold that a judgment of absolute divorce is not final until the QDRO is entered.

### A. ERISA and QDROs

To frame our discussion, we begin by reviewing the applicability of Employee Retirement Income Security Act, 29 U.S.C.

---

**3.** Wife agrees Husband can make the election but argues in her brief that she "is entitled to *at least* the portion of the pension that she is awarded as of the date of the Judgment of Divorce." (Emphasis in original.) That is, although Husband can make the election, his unilateral action should not reduce Wife's share of the pension, and Husband should "bear the full cost of that election." This issue is discussed in Part II of our opinion.

§ 1001 *et seq.* (1999)[4] ("ERISA"), to pensions plans and the importance of QDROs in divorce proceedings in which a pension plan subject to ERISA is an article of marital property. ERISA was first enacted in 1974, and the employee benefit plans covered by ERISA are set forth in 29 U.S.C. § 1003, which reads, in pertinent part:

(a) Except as provided in subsection (b)[5] or (c)[6] and in sections 201, 301, and 401 [29 U.S.C. §§ 1051, 1081, and 1101],[7] this title shall apply to any employee benefit plan if it is established or maintained—

(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) by both.

As previously explained in *Jenkins v. Jenkins,* 112 Md.App. 390, 397 n. 3, 685 A.2d 817 (1996), *cert. denied,* 344 Md. 718, 690 A.2d 524 (1997), "ERISA provisions generally prevent the assignment or distribution of the proceeds of an ERISA qualified plan to third parties." *See also Rohrbeck v. Rohrbeck,* 318 Md. 28, 30–36, 566 A.2d 767 (1989). With its enactment, Congress stated that ERISA was to "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in" 29 U.S.C. § 1003(a). 29 U.S.C. § 1144(a).

The combination of the anti-alienation provision in [the U.S. Labor and Tax Codes] and the preemption provision of ERISA § 514 [29 U.S.C. § 1144] eventually raised a ques-

---

**4.** Unless otherwise stated, all references to ERISA will be to the 1999 version, the version in force when Wife filed for divorce.

**5.** Pursuant to 29 U.S.C. § 1003(b), ERISA does not apply to, *inter alia,* governmental and church pension plans.

**6.** 29 U.S.C. § 1003(c) concerns IRAs.

**7.** These provisions exempt from ERISA benefit plans other than pensions plans.

tion, apparently not anticipated by Congress, as to the validity of orders entered in State domestic relations proceedings requiring that pension benefits be paid to a person other than the plan beneficiary.

*Rohrbeck,* 318 Md. at 32, 566 A.2d 767.

In light of these concerns, Congress, in 1984, amended ERISA to relax the anti-alienation provisions so that state courts could enter orders allowing benefits to be paid to someone other than the plan beneficiary. *Rohrbeck,* 318 Md. at 32–34, 566 A.2d 767. 29 U.S.C. § 1056(d);[8] 26 U.S.C.

---

8. 29 U.S.C. § 1056(d) reads, in pertinent part:

(d) *Assignment or alienation of plan benefits.*
(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

\* \* \*

(3) (A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.
(B) For purposes of this paragraph—
    (i) the term "qualified domestic relations order" means a domestic relations order—
        (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
        (II) with respect to which the requirements of subparagraphs (C) and (D) are met, and
    (ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—
        (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
        (II) is made pursuant to a State domestic relations law (including a community property law).
(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—
    (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

§§ 401, 414.[9]

A domestic relations order meeting certain qualifications (hence the QDRO moniker) for support or distribution of property may, however, require the allocation of all or part of a plan participant's benefits to an alternate payee. Use of this ERISA exception allows state trial courts effectively to alter title to otherwise untouchable pension plans without violating federal law.

*Jenkins,* 112 Md.App. at 397 n. 3, 685 A.2d 817. From a practical point of view, a QDRO allows divorcing parties to avoid a lump sum payment and the tax consequences that accompany such a payment. *See Freedenburg v. Freedenburg,* 123 Md.App. 729, 751, 720 A.2d 948 (1998).

The QDRO is the required medium to ensure that the alternate payee receives payment under the employee spouse's

---

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

(D) A domestic relations order meets the requirements of this subparagraph only if such order—

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

\* \* \*

(J) A person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this Act a beneficiary under the plan. Nothing in the preceding sentence shall permit a requirement under section 4001 [29 U.S.C. § 1301] of the payment of more than 1 premium with respect to a participant for any period.

(K) The term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

9. These provisions relate to the Internal Revenue Code.

pension plan. The fact that the employee may predecease the non-employee spouse makes the issue of survivorship rights in the pension very important. Pursuant to a divorce, a non-employee spouse may, with a valid QDRO, be named the survivor under a pension plan. 26 U.S.C. § 414(p)(5) (2000); 29 U.S.C. § 1056(d)(3)(F)(i) (2000). If the court does not order the employee spouse to elect survivor benefits, however, the non-employee spouse will lose rights to them by virtue of the divorce. *See* Joan M. Krauskopf and Sharon Burgees Seiling, *A Pilot Study on Marital Power as an Influence in Division of Pension Benefits at Divorce of Long Term Marriages*, 1996 J. Disp. Resol. 169, 173 (1996). Resolving the issue of survivorship rights in a pension and incorporating that resolution into the QDRO is especially important when one considers that, often, the party's pension is the most valuable item of marital property. *See Long v. Long,* 129 Md.App. 554, 574, 743 A.2d 281 (2000).

Notwithstanding their importance, issues and practice surrounding QDROs can give rise to contentious proceedings after a judgment of absolute divorce has been granted, because "ERISA does not necessarily require that a QDRO be part of the actual judgment in a case." *Hogle v. Hogle,* 732 N.E.2d 1278, 1281 (Ind.Ct.App.2000), *transfer denied,* 753 N.E.2d 9 (Ind.2001) (citing *In re Marriage of Bruns,* 535 N.W.2d 157, 162 (Iowa Ct.App.1995)). *See also Rohrbeck,* 318 Md. at 42–43, 566 A.2d 767, and Elizabeth M. Wells, *Step One: Draft the QDRO,* 24 Fam. Adv. 20 (Fall, 2001). Sometimes the delay in drafting the QDRO is simply the desire to postpone dealing with additional issues that may jeopardize an already fragile resolution of issues arising from the dissolution of the marriage. On the other hand, the QDRO is often drafted separately from and/or after a judgment of absolute divorce, because first, "it makes it easier for the Plan Administrator to review an order that does not contain a lot of provisions relating to other assets. Secondly, many employees do not want to disclose information about a divorce settlement to their employers." Marcia C. Fidis, *Tax Quali-*

*fied Private Employer Retirement Plans, in* QUALIFIED DOMESTIC RELATIONS ORDERS (QDROs) C–01, C–10 (MICPEL, 1994).

Whatever the reason, this delay unfortunately creates a false sense of finality and generates questions regarding the appealability of divorce judgments involving pension issues. In the opinion of one commentator, "[d]rafting a qualified domestic relations order (QDRO) concurrently with the divorce is essential." Gary Shulman, *QDROs—The Ticking Time Bomb,* 23 Fam. Adv. 26, 26 (Spring, 2001). We agree that this would appear to be the better practice.

## B. Final Judgments and QDROs

In this case, during closing arguments, neither the parties nor the trial court discussed the need for a QDRO, and it is not mentioned in the judgment of absolute divorce. It is obvious, however, that a QDRO is essential to effect the intent of the judgment of absolute divorce, but Husband argues that the judgment of absolute divorce was a final judgment as to survivor benefits and that Wife cannot now reopen the proceedings or appeal with respect to such benefits. Wife urges us to hold that a judgment of absolute divorce is not a final judgment if a necessary QDRO has not been entered. This position might have merit, but we are not writing on a clean slate and the realities of current QDRO practices must be considered.

### 1. Was the QDRO Collateral or Integral to the Judgment of Absolute Divorce?

The Court of Appeals has stated that a QDRO can be either collateral to a judgment as an avenue for enforcement or it can be an integral part of the judgment itself. *Rohrbeck,* 318 Md. at 42–43, 566 A.2d 767; *Jenkins,* 112 Md.App. at 400 n. 6, 685 A.2d 817.

The [*Rohrbeck*] Court recognized that QDRO's may be collateral to, or an integral part of, a judgment depending on the circumstances. **When a judge specifically contemplates the issuance of a QDRO, before allowing a judgment to be finalized, the QDRO is an integral part of the**

> judgment without which there can be no final judgment. Under the rule set forth in *Rohrbeck,* when the trial judge contemplates any additional non-collateral action before entry of final judgment, there can be no final judgment absent the anticipated action.

*Jenkins,* 112 Md.App. at 402, 685 A.2d 817 (emphasis supplied).

As to a collateral QDRO, we stated in *Jenkins* that, "[i]n many instances, a QDRO is issued after judgment as an enforcement tool to effectuate the disposition of property under Md. Fam. Law Code Ann. § 8–205.[10] There are other circumstances when the need for a QDRO may not be apparent at the time of final judgment." *Jenkins,* 112 Md.App. at 400, 685 A.2d 817. Despite the foregoing assertions, we have not been directed to any cases in Maryland where the QDRO was held to be collateral to a judgment of absolute divorce as a means for enforcement of an order contained in a judgment of absolute divorce. In cases in which the QDRO has been held to be "integral" to the judgment of divorce, the court has indicated that the QDRO was required and would be presented to the court. *See, e.g., Rohrbeck,* 318 Md. at 37, 566 A.2d 767 (the court expressly foresaw entry of a QDRO and held the case open until the QDRO was received); *Welsh v. Welsh,* 135 Md.App. 29, 54, 761 A.2d 949 (2000), *cert. denied,* 363 Md. 207, 768 A.2d 55 (2001) (the court expressly recognized the need for a QDRO); *Jenkins,* 112 Md.App. at 400, 685 A.2d 817 (the court expressly recognized that the judgment was final except for QDRO issues); *Fultz v. Shaffer,* 111 Md.App. 278, 283, 681 A.2d 568 (1996) (the parties agreed to continuing jurisdiction by the court over QDRO matters); and *Heyda v. Heyda,* 94 Md.App. 91, 94, 96, 615 A.2d 1218 (1992) (the court specifically anticipated that the QDRO would follow the stipulation of division of the pension and the right to survivor benefits).

---

**10.** Md.Code (1984, 1999 Repl.Vol.), § 8–205 of the Family Law Article ("FL").

■ Notwithstanding that pensions subject to ERISA will require entry of a QDRO [11] for the non-employee spouse to receive payments under the pension, even if a QDRO is not specifically ordered by the circuit court, post-judgment QDROs in other cases in which the QDRO is not expressly raised by the trial judge appear to have been treated generally as collateral to the judgment. In this way it is an avenue for enforcement, because without a QDRO, the non-employee spouse would not receive payments under the pension plan. *Rohrbeck*, 318 Md. at 32–34, 566 A.2d 767. Accordingly, we hold that the QDRO in this case was collateral to the judgment of absolute divorce.

### 2. Finality of the Judgment of Absolute Divorce

We foresee problems with holding that the judgment of absolute divorce is not a final judgment in light of the current practice of often presenting QDROs months, sometimes even years, after a marriage has ended. We have found no case, statute, or rule in Maryland or elsewhere that requires a QDRO to be filed within a specific time frame after a judgment of absolute divorce has been entered. Therefore, the timing of the presentation of the QDRO is dependent on the diligence of the parties and their counsel or the assertiveness of the trial court. Delaying the finality of the judgment of absolute divorce creates a potential problem that, if one party drags his or her feet, the other party will be unable to appeal other issues contained in the judgment for absolute divorce, such as alimony and other divisions of marital property.

We recognize that potentially two appeals might be filed for every divorce case involving a QDRO, which is not conducive

---

11. We note that orders similar to a QDRO, but which are not called QDROs, may be entered with respect to government pensions in order to ensure that the non-employee spouse will get his or her share of the pension benefit awarded in a judgment of absolute divorce. *See Heyda*, 94 Md.App. 91, 615 A.2d 1218 (explaining that the word QDRO should not be used in cases pertaining to government pensions.). Nevertheless, government pension cases are analogous to cases involving pensions that are subject to QDROs.

to judicial economy, but current QDRO practice leads us to conclude that issues encompassed by the QDRO that have not been decided previously, either expressly or by necessary implication in the judgment of absolute divorce, may be appealed independently of the judgment of absolute divorce.[12] In this case, however, this would not include the "if, as and when" distribution of the pension, which was resolved in the judgment of absolute divorce.

■ Although Wife timely appealed the QDRO, she did not timely appeal the judgment for absolute divorce. As we shall explain below, the survivor benefits are a form of marital property and, as such, must be brought to the attention of the court for appropriate division. Because the parties' marital property was divided at the time the judgment of absolute divorce was entered, that judgment was final with respect to the division of the marital property and cannot now be raised.

## C. Survivor Benefits

■ The decision to award survivor benefits is within the sound discretion of the trial court. *Matthews v. Matthews*, 336 Md. 241, 248, 647 A.2d 812 (1994) (quoting *Haydu v. Haydu*, 591 So.2d 655 (Fla.Dist.Ct.App.1991)); *Caldwell v.*

---

**12.** We note that other states permit an appeal from a QDRO. For example, the Illinois Court of Appeals has allowed parties to appeal from a QDRO rather than a judgment of divorce. *See In re Marriage of Ward*, 267 Ill.App.3d 35, 40, 204 Ill.Dec. 449, 641 N.E.2d 879 (1994), *appeal denied*, 161 Ill.2d 542, 208 Ill.Dec. 370, 649 N.E.2d 426 (1995). In addition, in Texas, the code provides the trial court for continuing jurisdiction over the QDRO:

[T]he court that rendered a **final decree of divorce or annulment** or another final order dividing property under this title retains continuing, exclusive jurisdiction to render an enforceable qualified domestic relations order or similar order permitting payment of pension, retirement plan, or other employee benefits divisible under the law of this state or of the United States to an alternate payee or other lawful payee.

Tex. Fam.Code Ann. § 9.101(a) (West 2000) (emphasis supplied). Proceedings over the QDRO continue as do normal civil proceedings in Texas., Tex. Fam.Code. Ann. § 9.102(d), which eventually results in the right to appeal. *See* Texas Rules of Civil Procedure Rule 571 *et seq.;* Texas Rules of Appellate Procedure Rule 4.

*Caldwell,* 103 Md.App. 452, 459, 653 A.2d 994, *cert. denied,* 339 Md. 166, 661 A.2d 700 (1995) (quoting *Pleasant v. Pleasant,* 97 Md.App. 711, 725, 632 A.2d 202 (1993)). It is undisputed that, although Wife could have been named as the surviving spouse under the PEPCO plan, she never specifically asked for those benefits prior to the proposed QDRO. She argues, however, that her request that the court "transfer at least one-half of the marital portion of [Husband's] interest in [his] pension" was sufficient to raise the issue of survivor benefits, because survivor benefits are inextricably linked to pensions.

### 1. Are Survivor Benefits Separate Marital Property?

The Court of Appeals has previously said:

[In Md.Code Ann. (1974, 1980 Repl.Vol.) § 3–6A–01(e) of the Courts and Judicial Proceedings Article,] "marital property" is defined as *"all property,* however titled, acquired by either or both spouses during the marriage." (emphasis supplied). The term property, "when considered in a broad sense, is a term of wide and rather comprehensive signification. . . . It has been stated that the term embraces everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition."

*Deering v. Deering,* 292 Md. 115, 125, 437 A.2d 883 (1981) (quoting *Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914, 915 (1965)) (footnote omitted).

This Court has previously held that "the right to a survivor annuity is incident to the marital relationship, and that such a right, analogous to the right to the pension benefits themselves, falls within the definition of marital property contained in *Deering v. Deering, supra,* 292 Md. at 125, 437 A.2d 883." *Pleasant,* 97 Md.App. at 725, 632 A.2d 202.

Although the *Matthews* Court recognized the holding in *Pleasant,* 336 Md. at 253, 647 A.2d 812, its resolution of that case did not require it to reach that issue. The question in *Matthews* was whether the circuit court had the power to require that Admiral Matthews maintain his former wife as a

beneficiary under his military Survivor Benefit Plan ("SBP").[13] The circuit court believed that it could not enter such an order, but the Court of Appeals held that it could pursuant to the federal statute. In its discussion, the *Matthews* Court touched on the issue of survivor benefits as marital property. *Matthews*, 336 Md. at 253–54, 647 A.2d 812.

The Court found that "a court order requiring a party to designate a former spouse as a plan beneficiary does not constitute a transfer of property." *Matthews*, 336 Md. at 253, 647 A.2d 812. The Court went on to recognize that "other courts have characterized the SBP as a separate and distinct property interest," including *Pleasant*. The Court of Appeals decided, notwithstanding Admiral Matthews' protestations that "the SBP is neither property, nor is it an interest in a pension of retirement plan[,]" it was not required to characterize the nature of the SBP. The Court of Appeals did appear to hold, however, that the SBP was either property or a property right, stating that "[i]f it is property, it gets its form of property from the federal statute. If it is a property right, it is one subject to all the conditions of the statute that created it—one of which is that the state court may order the member to designate a beneficiary." *Matthews*, 336 Md. at 253, 647 A.2d 812.

No matter how the survivor benefit is characterized, either as a property right or as property, all types of property are considered "marital property" under *Deering* and FL § 8–201(e),[14] which defines marital property as follows:

---

**13.** Unlike pensions subject to ERISA, which are administered by each individual plan, the SBP is a creature of statute, so the rules of administration of the plan are more easily determined. 10 U.S.C. §§ 1447 *et seq.* (2000).

**14.** Pension benefits are construed as contract rights. *Deering*, 292 Md. at 127, 437 A.2d 883. " 'Since a contractual right is not an expectancy but a chose in action, a form of property, . . . an employee acquires a [judicially recognized] property right to pension benefits when he enters upon the performance of his employment contract.' " *Id.* (quoting *In re Marriage of Brown*, 15 Cal.3d 838, 845, 126 Cal.Rptr. 633, 544 P.2d 561 (1976)). *See also Dodds v. Shamer*, 339 Md. 540, 548–49, 663 A.2d

(1) "Marital property" means **the property,** however titled,[15] acquired by 1 or both parties during the marriage.

(2) "Marital property" includes any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by valid agreement.

(3) Except as provided in paragraph (2) of this subsection, "marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources. [Emphasis supplied.]

We revisited the issue of survivor benefits as marital property in *Caldwell,* 103 Md.App. at 458–59, 653 A.2d 994, a year after *Matthews* was decided. Explaining language in *Pleasant* stating that survivor benefits are "analogous to the right to the pension benefits themselves[,]" we said, in *Caldwell,* "that the 'right to a survivor annuity is incident to the marital relationship,' and thus marital property over which a court has authority." *Caldwell,* 103 Md.App. at 458, 653 A.2d 994

1318 (1995), explaining that the term "property" is broadly construed and includes "property rights:"

We have recognized that property is a term that has broad and comprehensive significance; it embraces "everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition." *Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914, 915 (1965); *accord Deering v. Deering,* 292 Md. 115, 125, 437 A.2d 883, 889 (1981); *see also Samet v. Farmers' & Merchants' Nat'l Bank of Baltimore,* 247 F. 669 (4th Cir.1917). Our notions of what constitutes property "may reasonably be construed to include obligations, rights and other intangibles as well as physical things." *Bouse v. Hutzler,* 180 Md. 682, 686, 26 A.2d 767, 769 (1942) (citing *Fidelity & Deposit Co. v. Arenz,* 290 U.S. 66, 54 S.Ct. 16, 78 L.Ed. 176 (1933)).

**15.** Although the statute speaks in terms of "title," the Court of Appeals has long held that "the language of § 3–6A-01 (e) of the Courts and Judicial Proceedings Article[, the predecessor to FL § 8–201,] that ' "marital property" is all property, however titled,' expressly establishes that a determination of what constitutes marital property ... is not dependent upon the legalistic concept of title." *Harper v. Harper,* 294 Md. 54, 78–79, 448 A.2d 916 (1982).

(quoting *Pleasant,* 97 Md.App. at 725, 632 A.2d 202). "Analogous" means "similar" or a "likeness." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 41 (10th ed.2000). "SIMILAR, ANALOGOUS ... means closely resembling each other. SIMILAR implies the possibility of being mistaken for each other <all the houses in the development are *similar* >. ANALOGOUS applies to things belonging in essentially different categories but nevertheless having many similarities <*analogous* political systems>." *Id.* at 1090, 632 A.2d 202. Therefore, although survivor benefits are like a pension, they have been treated as marital property in their own right.

A number of courts in other states have also found that survivor benefits are marital property separate and apart from the pension plans to which they are attached. *Fielitz v. Fielitz,* 1998 WL 918815 at *2, 1998 Del.Fam. Ct. LEXIS 182 at *4 (Del.Fam.Ct.1998) ("The Court, however, views survivor annuities as a unique form of marital asset.") (citing *Caldwell, supra* ); *Smithberg v. Illinois Mun. Retirement Fund,* 192 Ill.2d 291, 302, 248 Ill.Dec. 909, 735 N.E.2d 560, 567 (2000) (the "survivor benefit ... has been held to be a 'distinct property interest' "); *Workman v. Workman,* 106 N.C.App. 562, 564, 418 S.E.2d 269, 270 (1992) (mentioning pension and survivor benefits as separate marital property); *Rowlan v. Rowlan,* 1991 Ok. Civ.App. 88, 817 P.2d 1285, 1286 (Okla.Ct.App.1991) (referring to a disability pension and survivor benefits as distinct pieces of marital property); *Nemeth v. Nemeth,* 325 S.C. 480, 488–89, 481 S.E.2d 181, 186 (S.C.Ct.App.1997); *Dugan v. Childers,* 261 Va. 3, 8, 539 S.E.2d 723, 725 (2001) (citing *King v. King,* 225 Ga.App. 298, 300, 483 S.E.2d 379, 382 (1997), for the proposition that a military Survivor Benefit Plan is a distinct piece of marital property); and *Smith v. Smith,* 190 W.Va. 402, 404, 438 S.E.2d 582, 584 (1993) (same).

Wife urges us, as she did the trial court, to follow the Texas court's decision in *Harvey v. Harvey,* 905 S.W.2d 760 (Tex.Ct. App.1995). That court specifically required a showing that the survivor benefits were "separate and distinct from 'retirement benefits[.]' " *Harvey,* 905 S.W.2d at 764. Although this language may imply a presumption that survivor benefits are to

be treated as part of a pension rather than as separate marital property, it is also consistent with the court's award of "45 per cent of the present value of [Gary's] accrued benefits" in the 3 M pension plan and the wife's right to "elect any form of payment of her portion of the available benefit." *Harvey*, 905 S.W.2d at 764. In other words, the trial court's award expressly included "accrued benefits" in the pension plan and provided for the Wife's election of payment for such benefits.

Other states either expressly treat or otherwise appear to treat survivor benefits as an indivisible part of a spouse's pension benefits. *Landers v. Landers*, 631 So.2d 1043, 1045 (Ala.Civ.App.1993) (appear to treat them as indivisible, although the court does not explicitly say so); *Zito v. Zito*, 969 P.2d 1144, 1145 (Alaska 1998) (finding that, once the parties agreed to divide the pension, the survivor benefits must also be divided because they are an "integral part" of the pension); *In re Marriage of Payne*, 897 P.2d 888, 889 (Colo.Ct.App.1995) ("we also do not view the Survivor Benefit Plan as a separate asset"); and *Conaway v. Conaway*, 899 S.W.2d 574, 576 (Mo.Ct.App.1995) (suggesting, although not explicitly stating, that survivor benefits are merely one part of pensions).

Wife attempts to circumvent *Pleasant* by arguing that there is no reference to "survivor benefits" in Md.Code Ann. (1984, 1999 Repl.Vol.), § 8–205(a) of the Family Law Article ("FL"). This provision states:

Subject to the provisions of subsection (b) of this section, after the court determines which property is marital property, and the value of the marital property, the court may transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan from 1 party to either or both parties, grant a monetary award, or both, as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

FL § 8–205(a). The implication is that the failure to identify survivor benefits as a separate item represents the legislature's determination that a survivor benefit is part of the

enumerated plan or plans involved in the case. We are not persuaded.

### 2. Effect of Survivor Benefits Designation as Separate Marital Assets

■ As separate items of marital property, the party seeking the divorce has the burden to prove their existence and value. *Blake v. Blake,* 341 Md. 326, 345, 670 A.2d 472 (1996) (citing *Odunukwe v. Odunukwe,* 98 Md.App. 273, 282, 633 A.2d 418, 422 (1993) (party claiming a marital interest in specific property bears the burden of proving that the property is "marital"); *Noffsinger v. Noffsinger,* 95 Md.App. 265, 281, 620 A.2d 415, 422, *cert. denied,* 331 Md. 197, 627 A.2d 539 (1993) (party claiming marital property interest must produce evidence as to its identity and value)). The burden was, therefore, on Wife to expressly identify and value the survivor benefits separately from the pension payments.

Wife argued in both her brief and at oral argument that the court's statement that it could not consider survivor benefits if they were not specifically requested somehow translates into an affirmative requirement to list survivor benefits in the divorce complaint. We disagree. The Maryland Rules do not require listing specific marital property in the divorce complaint. Rule 9–203.[16] The listing of marital property need not be filed until ten days before the scheduled trial date or at a time specified by the court. Rule 9–206(a).[17] The parties thus have ample time under the Rules to uncover and list each item of property at issue that needs to be considered by the court.

The Family Court of Delaware has specifically addressed the failure of a party in divorce proceedings to raise the issue of survivor benefits before the court:

---

**16.** The Rules pertaining to Family Law Actions were amended effective July 1, 2001, after the issuance of the judgment of absolute divorce in this case. Current Rule 9–202 relates to former Rule 9–203.

**17.** *See, supra,* note 12. Current Rule 9–207 relates to former Rule 9–206.

While Wife requested the entry of a QDRO there was at trial no evidence presented whatsoever with respect to what type of order would be "qualified" under the Retirement Equity Act of 1984, what the tax consequences of such an order would be, what, if any, "survivorship" benefits would inure to Wife, and the consequences to Husband if such benefits were provided to Wife, or any other relevant features of the type of order Wife is seeking. Moreover, Wife did not offer into evidence the actual plan.[18] Upon questioning by the Court, counsel was vague in providing the necessary information. It would thus be virtually impossible for this Court to fashion a QDRO on the basis of the clearly inadequate factual and legal record in this case. It is the responsibility of the party seeking a QDRO to furnish a basis for the entry of such an order. *Inglis v. Inglis,* Del.Supr., No. 177, 1985, 1986 WL 16299, Moore, J. (January 28, 1986). Here, Wife failed to furnish any information along these lines.

*Hay v. Hay,* 1986 Del.Fam. Ct. LEXIS 205, at *14–15 (Del. Fam.Ct.1986).

In a more recent case, the Supreme Court of Delaware stated that "Wife never specifically informed the court that she was seeking survivorship benefits, and that none of the documents filed prior to the decision sought such relief[,]" indicating that the parties need to bring the issue of survivor benefits to the court's attention. *Glenn v. Schlerf,* 633 A.2d 369, 1993 WL 385030 at *2, 1993 Del. LEXIS 369 at *4 (Del.1993). The court also mentioned that "it is Family Court Judges' practice to explicitly mention survivorship when it is to be included in a pension partition. Thus, it is reasonable to presume that if a property division order or QDRO does not mention survivorship, it does not cover survivorship." *Id.,* 1993 WL 385030 at *2, 1993 Del. LEXIS 369 at *5–6 (citations omitted).

---

**18.** Here, the PEPCO Plan was entered into evidence. Although that document mentions survivor benefits, Wife did not raise any of the other issues mentioned by the Delaware Family Court.

The trial court in this case indicated that it would likely be raising the issue of survivor benefits *sua sponte* in the future. We commend this practice, but the burden rests on the parties to alert the court to the various articles of marital property at issue in the case and to provide the information necessary to resolve the issues related to such property.

Because Wife did not bring the survivor benefits to the attention of the court, it could not weigh the various factors that would be required to determine whether to assign her survival benefits and, if it did, how that might affect the marital property award. We have suggested that a survivor annuity may be awarded "in conjunction with an 'if, as and when' payment," although the court must determine how the "if, as and when" award should be altered, if at all, to account for the costs of the survivor benefit. *Pleasant,* 97 Md.App. at 729, 632 A.2d 202. In a subsequent case, we stated that, "[i]n our view, the 'if, as and when' method ... is not appropriate for the payment of a survivor annuity benefit[,]" limiting the "if, as and when" method to the former spouse's total pension annuity.[19] *Caldwell,* 103 Md.App. at 461, 653 A.2d 994.

In *Caldwell,* we put forth two possible methods for determining how the survivor annuity benefit is to be awarded. The first is based on *In re Marriage of Blackston,* 258 Ill.App.3d 401, 196 Ill. Dec. 606, 630 N.E.2d 541 (1994). The Illinois Court of Appeals "determined the former spouse's share of the survivor annuity benefit by multiplying the marital portion of the total pension annuity by 55%, the maximum attributable to the survivor annuity benefit. This, however, limits the former spouse to no more than the marital portion of the survivor annuity benefit." *Caldwell,* 103 Md.App. at 461, 653 A.2d 994. The second was to treat the survivor benefit as part of the spousal support obligation and to require it to be maintained as part of that award, as opposed to a separate pension award. *Id.* at 462, 653 A.2d 994 (citing *Matthews,* 336 Md. at 253–54, 647 A.2d 812).

---

19. *Caldwell* deals with a federal government Civil Service pension.

We need not decide if there is, much less resolve, any inherent conflict between *Caldwell* and *Pleasant* because here Wife did not request and, therefore, was not awarded survivor benefits. We only comment that the varying manner in which a trial court may award survivor benefits requires a degree of inquiry that is better accomplished at the trial level, along with the other marital property considerations, rather than after the fact when the QDRO is presented.

In addition to the forgoing inquiries to be undertaken by a trial court, Husband suggested that his children might be named as survivor beneficiaries on the pension plan. It is unclear from the record whether this is possible, but it is an option Husband might have wished to pursue in light of their daughter Jennifer Potts' apparent problems.[20]

Assuming Wife was named as the survivor, the trial court would have had to determine which spouse was to bear the financial burden of the election. The survivor benefit must be "purchased," so when an employee makes that election, the monthly payments are generally lower than they would be if the employee elected to take payment over the course of his or her own life. This lowered monthly payment reflects the cost of the survivor benefit, and we have recognized that, in divorce cases, one of the parties must pay for this benefit. *See Pleasant*, 97 Md.App. at 725, 729, 632 A.2d 202; Wells, 24 Fam. Adv. at 25. Thus, when the court orders the non-employee spouse to be named as "surviving spouse," it must decide which party will pay for the benefit if the parties cannot otherwise agree. Just as Wife argues here that she should not be made to carry the financial burden of Husband's choices with respect to his pension plan, Husband should be allowed to argue that he not have to carry the burden of Wife's decisions with respect to that same plan.

---

**20.** Jennifer apparently cannot live on her own, although she has obtained an Associate's degree and is employed. In the judgment of absolute divorce, the court found that "Jennifer Potts is not able to support herself on her own, although no support is necessary at this time[.]"

■ Here, the court was unable to exercise its discretion as to survivor benefits, because it was presented with no information or alternatives when it decided the marital property issues. Because the existence of survivor benefits was not raised and the benefits were not divided prior to entry of the judgment for absolute divorce, that judgment is final as to the division of marital property and the survivor's benefit.

## II.

Wife's second argument is that the court erred in allowing Husband to retain the right to elect survivor benefits at the time of his retirement. Wife contends that, if Husband exercises this right, he will unilaterally reduce the value of his pension, thus reducing the amount to which she is entitled pursuant to the judgment of absolute divorce. The court made the following ruling on this point:

The second issue is whether Mr. Potts can, if he remarries, give survivor benefits to his new wife which will have the effect of reducing his first wife's share somewhat.

This is an "if, as and when" pension. We do not believe Ms. Potts has any right to a specific number, only a share of the amount of the pensions actually received. Again, the parties are free to contract for this result.

In determining the value of pension benefits, the court may proceed in one of three ways:

"First, the trial court could consider the amount of [the husband's] contributions to the fund, plus interest, and award [the wife] an appropriate share.... Second, the trial court could attempt to calculate the present value of [the husband's] retirement benefits when they vest under the plan. Under this approach, the benefits payable in the future would have to be discounted for interest in the future, for mortality ... and for vesting.... The benefits would then have to be calculated with respect to [the husband's] life expectancy as a retiree. This calculation involves considerable uncertainty, and the amount yielded changes as different assumptions are used with respect to

mortality, job turn-over, etc. . . . It has been recognized that this kind of calculation can be very difficult and that, where it becomes too speculative, the trial court should use a different method of valuation.

"Under either of the above two methods, the trial court would have the discretion to order the payment to [the wife] of her share in either a lump sum or in installments, depending primarily on the other assets and relative financial positions of the parties. The third method, which has been used widely . . . is to determine a fixed percentage for [the wife] of any future payments [the husband] receives under the plan, payable to her as, if, and when paid to [the husband]. Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is entitled."

*Deering,* 292 Md. at 130–31, 437 A.2d 883 (quoting *Bloomer v. Bloomer,* 84 Wis.2d 124, 136, 267 N.W.2d 235, 241 (1978)) (other citations omitted).

The third method, which has been referred to as the "if, as and when" method, recognizes that the value of a pension at the time of a divorce cannot be ascertained with certainty until the employee spouse retires. *Kelly v. Kelly,* 118 Md.App. 463, 471, 702 A.2d 999 (1997). It allows the non-employee spouse to reap the benefit of an increase in the value of the pension over time, or, conversely, forces both parties to share in any loss of value. *Bangs v. Bangs,* 59 Md.App. 350, 367, 475 A.2d 1214 (1984). The formula, referred to as the *Bangs* formula, calculates the value of the pension to which the non-employee spouse is entitled as the percentage multiplied by a fraction, the numerator of which is the number of months and years of the marriage, the denominator of which is the number of months and years of employment at the time of retirement. *Bangs,* 59 Md.App. at 356, 475 A.2d 1214.

In the present case, the formula that will be used is:

$$\frac{1}{2} \times \frac{(27 \text{ y., } 1 \text{ mo. of marriage})^{21}}{(\text{unknown y., mo. of employment})}$$

The result of this formula will be applied to the pension to yield a sum representing the value of the pension to the non-employee spouse ("V"). Wife will be paid until she has received the entire sum "V."

At first blush, the argument that Husband can act to unilaterally diminish the amount of the pension,[22] thus reducing the amount to which Wife is entitled, does not appear to be valid. This is because, once Husband retires, Wife is entitled to "V," pursuant to the judgment ordering her to receive 50% of the pension "if, as and when" Husband receives it.[23] Nevertheless, we recognize that when the value of the pension is determined may affect its value. If the value of the pension is determined after the employee spouse makes an election, the overall value of the pension to the non-employee spouse may be adversely affected.

We explain, presuming that Husband obtains the full amount of his pension and that he could elect to take survivor benefits. There is a fee for survivor benefits, and, if such benefits are elected, the fee is deducted from the value of the pension, i.e., off the top. If the value of the pension is calculated after Husband makes the election, Wife's share is decreased by his actions. If the value is determined before Husband makes an election, Wife will obtain her designated share of the pension.

Absent some express determination by the trial judge to the contrary, we believe that it is inherent in the *Bangs* formula

---

21. The parties were married for 27 years, one month, and 24 days.

22. In fact, according to the PEPCO plan information in the record, where the employee is married, a survivor annuity will automatically be selected unless specifically waived.

23. We note that *Caldwell*, 103 Md.App. 452, 653 A.2d 994, raises a question as to how the pension is to be valued, but we note that *Caldwell* was only concerned with the propriety of the "if, as and when" distribution when survivor benefits are awarded. Consequently, there is no need to address the concerns raised in that case.

that the valuation of the pension, for purposes of the non-employee spouse's share, be determined prior to the employee making any elections that would diminish the value. This is because the purpose of the formula is to allow the true value of the designated marital portion of a pension to be ascertained after the fact:

"As we noted in *Hoffman v. Hoffman*, [93 Md.App. 704, 614 A.2d 988 (1992)], 'the *amount* of the "as, if and when" payment, however, cannot be determined until [Husband] retires from [CIBA–GEIGY] and the *number of years of total employment is known.' Hoffman*, 93 Md.App. at 719, 614 A.2d 988 (emphasis added); *see also Bangs*, 59 Md.App. at 367, 475 A.2d 1214. Similarly, the trial court cannot presently determine a percentage of Husband's pension due Wife until such time as the total number of years of employment is known. *Pleasant v. Pleasant*, 97 Md.App. 711, 724, 632 A.2d 202 (1993). During trial, Husband testified that his present intentions with respect to employment with CIBA–GEIGY are "that I could work for another twenty years for the company. I worked for twenty years now and hope I can do another twenty." Therefore, fourteen years and four months of marriage (May 21, 1979 to September 24, 1993) will need to be divided by the total number of years and months credited toward Husband's retirement, at the time he retires."

*Kelly*, 118 Md.App. at 471, 702 A.2d 999 (quoting *Scott v. Scott*, 103 Md.App. 500, 519, 653 A.2d 1017 (1995)).

Other jurisdictions have explained that the effect of an "if, as and when" pension is to allow the non-employee spouse's share of the pension to be calculated as of the time of the divorce. *Laing v. Laing*, 741 P.2d 649, 657 (Alaska 1987) ("that portion of the pension which is marital property can be calculated as of the time of the divorce"); *Bender v. Bender*, 258 Conn. 733, 763, 785 A.2d 197 (2001) ("the trial court [properly] determined, at the time of dissolution, the percentage of the benefits to which the plaintiff would be entitled in the event that the pension vested, namely, 50 percent of the

476

pension benefits earned through the date of the dissolution decree").

We hold that although the Husband is free to elect survivor benefits for someone other than Wife, Wife's pension benefits shall not be less than she would have received if such an election had not been made. To the extent that the court ruled that Husband's election could reduce Wife's share, we believe that the court erred.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

**COSTS TO BE SPLIT EVENLY BETWEEN THE PARTIES.**