798 A.2d 1213

**Raymond P. MUSICK**

**v.**

**Doris MUSICK.**

**No. 534, Sept. Term 2002.**

Court of Special Appeals of Maryland.

May 31, 2002.

**496**

Gerald W. Soukup of Baltimore, for appellant.

Myles F. Friedman (Colleen A. Cavanaugh and Friedman, Garcia & Friedman, on the brief), Baltimore, for appellee.

Argued before HOLLANDER, KRAUSER, and PAUL E. ALPERT, (Ret., specially assigned), JJ.

ALPERT, J.

The Circuit Court for Baltimore County (Kahl, J.) entered an order directing appellant Raymond P. Musick to use the so-called Bangs[1] formula in calculating the percentage of his lump sum pension benefit payment to be paid to his former wife, appellee Doris Musick. Mr. Musick presents one question in this appeal. He asks:

> Whether the [c]ircuit [c]ourt erred in ordering a division of Husband's pension benefits pursuant to the *"Bangs* formula"* when the parties agreed that Wife's interest in the retirement benefits would be based upon their value at the time of the divorce?

Because we reject the underlying premise of appellant's argument—that the parties agreed that Mrs. Musick's interest in the pension would be based on the pension's value at the time of the divorce—we answer the question in the negative and affirm the trial court's order.

## FACTS

Mr. Musick began working for Bell Atlantic[2] in March of 1967. Six months later, in September of 1967, the parties were married. Mr. Musick worked for Bell Atlantic throughout the entire marriage and continued to work for the company for 18 months after the divorce.

On October 2, 1996, just prior to entry of the judgment of divorce, the parties entered into a property settlement agreement. That agreement mentioned Mr. Musick's Bell Atlantic pension and indicated that Mrs. Musick was to "receive fifty percent (50%) of the 'marital share' of said benefits." The agreement indicated that counsel for Mrs. Musick would prepare "the necessary [Qualified Domestic Relations

---

1. *See Bangs v. Bangs,* 59 Md.App. 350, 356, 475 A.2d 1214 (1984).

2. When Mr. Musick began working for the company, it was known as C & P Telephone Company. It is currently known as Verizon. Because the company was known as Bell Atlantic throughout most of the relevant period, we shall refer to it as such in this appeal.

Order, or QDRO,] [3] in order to accomplish that end, and for that purpose this Honorable Court shall continue to retain jurisdiction to amend any Judgment that may be passed, for purposes of accomplishing the intent of this Agreement."

A judgment of divorce, signed by the trial judge and counsel for both parties, was entered on October 21, 1996. The divorce decree provides that the property settlement agreement "is hereby approved and made a part of and incorporated in this Judgment, but not merged therein, having the same force and effect as if fully set forth herein." The decree further states, in pertinent part:

> IT IS ... ORDERED, that this is a Qualified Domestic Relations Order ... and in accordance therewith, the pension plan or program known as Bell Atlantic Savings and Security Plan, ... and all pension plan or benefits to which the Defendant Employee, RAYMOND P. MUSICK, is entitled to as of this date ... [are] to be considered as the pension benefits, which are the subject of this Order. The participant in the pension benefits and plan as hereinabove set forth is RAYMOND P. MUSICK, Defendant.... The alternative payee is the Plaintiff, DORIS MUSICK.... The Plaintiff/alternative payee's equitable interest in said pension is hereby declared to be fifty percent (50%) of the "marital share" of said pension benefit, the marital share being that fraction of the benefit whose numerator shall be the number of months of the parties' marriage during which

---

**3.** A Qualified Domestic Relations Orders is a domestic relations order that effectuates an exception to the anti-alienation requirements for pensions that are set forth in the federal tax and labor codes. *See* 29 U.S.C. § 1056(d)-(m) (anti-alienation and QDRO provisions of federal labor code); 26 U.S.C. §§ 401(a)(13)(B) and 414(p) (anti-alienation and QDRO provisions of Internal Revenue Code). "An attempt to cause pension plan benefits payable to one party to be paid to an alternate payee ... can succeed only through the mechanism of QDRO.... Absent such a qualified order, not only will the pension plan administrator refuse to implement the court's decision, but ... there is at least a reasonable argument that a non-qualified order may be invalid even as between the parties." *Rohrbeck v. Rohrbeck,* 318 Md. 28, 35–36, 566 A.2d 767 (1989) (citations omitted). *See also Potts v. Potts,* 142 Md. App. 448, 454–459, 790 A.2d 703 (2002).

benefits were being accumulated, which number is 348, and whose denominator shall be the total number of months during which benefits were accumulated prior to the time when the payment of such benefits shall commence. The Plaintiff, DORIS MUSICK, shall receive fifty percent (50%) of the aforesaid marital share of any payments made from the pension of the participant ... if, as and when such payments are made.

The divorce decree also provides:

IT IS FURTHER ORDERED, that the court retains jurisdiction to amend this Judgment for the purpose of maintaining its qualifications as a Qualified Domestic Relations Order under the Retirement Equity Act of 1984, or any other subsequent legislation ... provided that no such amendment or the right of the Court to so amend will invalidate this Order as "Qualified" under the Retirement Act.

The parties agree that this provision requires them to execute an amended Qualified Domestic Relations Order, to be approved by the court, in order to effectuate their agreement regarding the division of Mr. Musick's pension as set forth in the divorce decree.[4] They further agree that no such amended QDRO has been executed.

At the time of the parties' divorce on October 21, 1996, the value of Mr. Musick's pension, if he had elected to retire at that time and to receive a lump sum payment, would have been $55,081.53. Eighteen months later, when Mr. Musick did retire from Bell Atlantic, the amount of the lump sum payment, which Mr. Musick apparently elected to receive, had increased to $254,201.15. The increase was attributable main-

---

4. That is not to say that the judgment of divorce was not final. As this Court explained in *Potts,* 142 Md.App. at 461, 790 A.2d 703, "current QDRO practice leads us to conclude that issues encompassed by the QDRO that have not been decided previously, either expressly or by necessary implication in the judgment of absolute divorce, may be appealed independently of the judgment of divorce."

ly to Mr. Musick having completed 30 years of service to the company and to fluctuations in the stock market.

A dispute arose between the parties as to whether Mrs. Musick's share of the pension was to be based on the value of the pension at the time of the divorce or at the time of Mr. Musick's retirement. Counsel for Mr. Musick prepared various amended Qualified Domestic Relations Orders, each intended to facilitate payments to Mrs. Musick based on the value of the pension at the time of the divorce. Mrs. Musick refused to sign the amended orders.

In April of 2000, Mrs. Musick filed a petition for contempt [5] by which she asserted that Mr. Musick was failing to cooperate in efforts to resolve the dispute over the pension.[6] She requested the court's "assistance in bringing that matter to a conclusion." Mr. Musick filed a counter-petition for contempt. He alleged that Bell Atlantic would not turn over to him his pension payment because of Mrs. Musick's "deliberate refusal to approve a Qualified Domestic Relations Order dividing [the] pension benefits."

A hearing was held on March 6, 2001. The parties agreed to withdraw their petitions for contempt but requested that the court resolve the dispute concerning the division of Mr. Musick's pension. The case, as it proceeded, was thus in the nature of a declaratory judgment action.[7] After hearing argu-

---

**5.** *See* Md.Code (1984, 1999 Repl.Vol.), § 8–105(a)(2) of the Fam. Law Art. (providing that a trial court "may enforce by power of contempt or as an independent contract not superseded by the divorce decree the provisions of a deed, agreement, or settlement that contain language that the deed, agreement, or settlement is incorporated but not merged into a divorce decree"); Code (1974, 1998 Repl.Vol.), § 1–202(a) of the Cts. & Jud. Proc. Art. (establishing the court's authority to compel, through contempt proceedings, compliance with its commands); Md. Rule 15–206 (setting forth procedures for pursuing constructive civil contempt).

**6.** Mrs. Musick also asserted that Mr. Musick had failed to pay her the entire monetary award to which the parties had agreed. That matter is not a subject of this appeal.

**7.** *See* § 8–105(a)(2) of the Fam. Law Art.; Code (1974, 1998 Repl.Vol.), § 3–409 of the Cts. & Jud. Proc. Art.

ment and testimony, the court determined that the "agreement and judgment entered into by the parties" unambiguously established that the parties had agreed to divide Mr. Musick's pension using the *Bangs* formula. The court issued an order stating, in pertinent part,

> that the Plaintiff, DORIS MUSICK, is entitled to a Qualified Domestic Relations Order granting unto her her marital share of the Defendant's pension plan which he has through Bell Atlantic, with the marital formula to be 50% of a numerator of 348 months of marriage and 373 months as a denominator representing the total number of months during which benefits were accumulated and the Plaintiff, DORIS MUSICK, shall receive the same if, as and when the payments are made....

### DISCUSSION

 As this Court has summarized,

a settlement agreement is subject to general contract law.... Particular questions must be resolved by looking first to the particular language of the agreement at issue.... If that language is clear as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed.... The court may not rewrite terms of the contract or draw a new one when the terms of the disputed contract are clear and unambiguous, merely to avoid hardship or because one party has become dissatisfied with its provisions.... If, however, a reasonably prudent person would consider the contract susceptible to more than one reasonable interpretation, it will be deemed ambiguous.... In that case, the parties to a written contract will not be allowed to place their own interpretation on what it means or was intended to mean; the test is what a reasonable person in the position of the parties would have thought that it meant.... A contract is not ambiguous merely because the parties thereto cannot agree as to its proper interpretation.

*Fultz v. Shaffer,* 111 Md.App. 278, 297–98, 681 A.2d 568 (1996) (citations omitted). *See also Painewebber, Inc. v. East,* 363 Md. 408, 413–15, 768 A.2d 1029 (2001); *Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981).

Mr. Musick points out that the property settlement agreement was silent as to the amount of Mrs. Musick's interest in the pension. He asserts, however, that the judgment of divorce entered on October 21, 1996 expressly limits Mrs. Musick's interest in his pension to the value of the pension "as of this date." Mr. Musick misreads the divorce decree.

The divorce decree indicates that "all pension plan[s] or benefits to which the Defendant Employee, RAYMOND P. MUSICK, is entitled to *as of this date ... [are] to be considered as the pension benefits, which are the subject of this ~order."* (Emphasis added.) As the trial court determined, the judgment of divorce did *not* limit Mrs. Musick's interest in the pension to the value of the pension as of the date of the divorce. As to the portion of the pension to which Mrs. Musick is entitled, the decree states:

> The Plaintiff/alternate payee's equitable interest in said pension is hereby declared to be fifty percent (50%) of the "marital share" of said pension benefit, the marital share being that fraction of the benefit whose numerator shall be the number of months of the parties' marriage during which benefits were being accumulated, which number is 348, and *whose denominator shall be the total number of months during which benefits were accumulated prior to the time when the payment of such benefits shall commence. ...*

(Emphasis added.)

■ The plain language of the decree establishes that the portion of the pension that Mrs. Musick is to receive is to be calculated by: dividing the number of months that Mr. Musick worked toward accumulating the pension during the marriage by the total number of months that Mr. Musick worked toward accumulating the pension; multiplying the pension by that amount; and dividing the product in two. Clearly, that is what the parties intended when they stated that the "denomi-

nator shall be the total number of months during which benefits were accumulated prior to the time when the payment of such benefits shall commence." If the parties had intended for Mrs. Musick's interest in the pension to be valued as of the date of the divorce, there would have been no need to set forth the above-recited formula.

 Our interpretation of the decree is reinforced by the language in the decree that Mrs. Musick "shall receive fifty percent (50%) of the aforesaid marital share of any payments made from the pension of the participant ... if, as and when such payments are made." It is well-established that "the marital portion of the pension under the 'as, if and when' method of computation cannot be calculated until the total number years of employment is known." *Kelly v. Kelly,* 118 Md.App. 463, 472, 702 A.2d 999 (1997). *See also Potts v. Potts,* 142 Md.App. 448, 475, 790 A.2d 703 (2002). Under Mr. Musick's interpretation, the marital portion could have been valued on the date of the divorce.

As the trial court acknowledged, the formula agreed to by the parties and set forth in the judgment of divorce is precisely the formula that this Court approved in *Bangs v. Bangs,* 59 Md.App. 350, 356, 475 A.2d 1214 (1984), for determining the marital share of a spouse's pension.[8] That is, "[t]he fractional share ... is: one-half of a fraction of which the number of years and months of the marriage ... is the numerator and the total number of years and months of employment credited toward retirement is the denominator." *Id.*

It is true, as we recognized in *Bangs,* that under the formula a non-employee spouse could—and in this case did—reap the benefit of a post-divorce increase in the value of the pension. *See id.* at 367, 475 A.2d 1214. It is also true,

---

**8.** Three methods of calculating the marital share of a pension have been approved in Maryland. *See Kelly v. Kelly,* 118 Md.App. 463, 467, 702 A.2d 999 (1997). As an alternative to applying the *Bangs* formula, a trial court could value the marital share of a pension by determining the amount of the spouse's contribution to the fund, plus interest, or it could calculate the present value of the retirement benefits when they vest under the plan. *See id.*

however, that application of the formula could "force[ ] both parties to share in any loss of value." *Potts,* 142 Md.App. at 473, 790 A.2d 703. Significantly, an increase in pension benefits could be based, at least in part, on work performed during the marriage. *See Kelly,* 118 Md.App. at 472, 702 A.2d 999. "Moreover, any future adjustments by management might well relate to the length of appellant's total service, including the period of the marriage." *Id.*

We are somewhat puzzled by the inclusion in the record extract of an amended QDRO which is dated June 17, 1997, prior to Mr. Musick's retirement, and is signed by the trial judge and the parties. That amended order provides that Mrs. Musick's share of the pension is to be calculated by multiplying the "[a]ccrued benefit up to date of divorce" by 348 months, then dividing that number by 50–percent. We are skeptical that a reasonable payment for Mrs. Musick could be logically reached using that formula, which omits a denominator for the 348 months of employment during the marriage. In any event, although Mr. Musick referenced the June 17, 1997 amended QDRO in his brief, the parties stipulated below that they had not executed an amended QDRO that would effectuate the division of the pension in accordance with the judgment of divorce.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; APPELLANT TO PAY THE COSTS.**