475 A.2d 1214

**Herbert Pancoast BANGS**

v.

**Antonina K. BANGS.**

**No. 1058, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

June 7, 1984.

William T. Kerr, Towson, with whom were Bregel & Bregel, Chartered, Towson, on the brief, for appellant.

Ann M. Turnbull, Baltimore, with whom were Frank, Bernstein, Conaway & Goldman, Baltimore, on the brief, for appellee.

Argued before MOYLAN, GARRITY and BLOOM, JJ.

BLOOM, Judge.

The Circuit Court for Baltimore County granted the appellee, Antonina Bangs, a divorce *a vinculo matrimonii* from the appellant, Herbert Pancoast Bangs, on the ground of voluntary separation. The court also awarded appellee custody of the parties' minor child, alimony, child support, a monetary award which included part of appellant's pension as he receives it, and counsel fees.

In this appeal, Mr. Bangs has launched a multi-pronged attack on the decree. He presents a total of nine issues in his brief, the first eight of which relate to the propriety of the monetary award and the ninth to the award of alimony. He will prevail on none of them.

### Facts

The parties were married on February 28, 1970. On August 12, 1971, the husband's mother made a gift to him of an undivided interest in real estate by conveying her home to herself and him as joint tenants. The property, then unencumbered, was valued at $37,500. Shortly thereafter, the husband and his mother borrowed $25,000, secured by a mortgage on the jointly owned property, and built a second, smaller house on the property. The husband's mother then lived in the newer house, referred to by

the parties as the "small house"; and the parties occupied the original house, referred to as the "large house." During their marriage, the parties used $8,740 of marital funds to make payments on the mortgage. They also made improvements to the large house. At trial, the wife testified that the kitchen was redesigned, a wall was built in the living room, and a new bathroom was added, all at a cost of between $5,000 and $8,000. In addition, she testified that a new closet system was installed at a cost of several hundred dollars and that landscaping was done at a cost of $4,000.

A fire on June 25, 1979, destroyed the large house and all of the couple's personal property. They received $151,-721.89 in insurance proceeds after the fire and before their separation. Of that total, $95,613 was for destruction of the house and $53,092 was for loss of the contents. Payment of the insurance proceeds was received in checks payable to the parties jointly. The checks were endorsed and deposited in a money market account titled in the husband's name. It is undisputed that the entire amount of $95,613 received by reason of damages to the building was spent by the husband in reconstructing the large house. What happened to the $53,092 received for loss of the contents, however, was the subject of considerable controversy. The husband asserted that much of that money was "spent for or on behalf of [the wife]." She, on the other hand, while agreeing that some of the money was spent on her behalf, denies that such expenditures were to the extent alleged by the husband. It was undisputed that a total of $120,000 was spent in rebuilding the large house. Since the home insurance proceeds totaled $95,613, about $25,000 over and above that amount was spent in the reconstruction. The husband claimed that "the additional monies [were] provided from 'contents money and salary,' but principally from contents money."

After the fire, the parties lived at first in a hotel and then later in a trailer located on the property. In late June 1980, the husband moved out of the trailer and into the small house with his mother. He later began living with another

woman in a motel. Eventually, he and his girlfriend then moved into the reconstructed large house upon its completion.

In addition to granting appellee a divorce, the decree ordered appellant to pay appellee $350 per month in alimony and $300 per month in child support. Appellee was granted a monetary award of $32,900 plus a future sum or sums of money equal to a fractional share of appellant's retirement pension if, as and when he receives it. The fractional share payable to appellee out of each pension payment appellant receives is: one-half of a fraction of which the number of years and months of the marriage (12 years, 7 months) is the numerator and the total number of years and months of employment credited toward retirement is the denominator:

$$\frac{1}{2} \times \frac{\text{Twelve years and seven months of marriage}}{\text{total years of employment}}$$

If appellant voluntarily takes his pension as a lump sum, either before or after retirement, then, upon receipt of that lump sum, he must pay to appellee the sum of $22,500 plus simple interest thereon at the rate of 10 percent per annum from July 1, 1983, to the date of payment.

## I. *Monetary Award*

The Maryland General Assembly enacted the Property Disposition in Divorce and Annulment Act, Md.Cts. & Jud. Proc.Code Ann. §§ 3–6A–01 through 3–6A–07, in 1978 "to protect the interests of spouses who had made nonmonetary contributions to the marital residence." *Harper v. Harper,* 294 Md. 54, 63, 448 A.2d 916 (1982). The statutory provisions which are relevant to our inquiry are §§ 3–6A–01(e) and 3–6A–05(a)(1), (b), and (c).

Section 3–6A–01(e) provides:

(e) *Marital Property.*—"Marital Property" is all property, however titled, acquired by either or both spouses during their marriage. *It does not include* property acquired prior to the marriage, *property acquired by inheritance or gift from a third party,* or property

excluded by valid agreement or property traceable to any of these sources.

(Emphasis added).

Section 3–6A–05(a)(1) provides in pertinent part that "[i]n granting an absolute divorce or annulment ... the court shall determine which property is marital property if the division of property is an issue."

Section 3–6A–05(b) and (c) provide:

(b) The court shall determine the value of all marital property. After making the determination, the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The amount of the award and the method of its payment shall be determined after considering each of the following factors:

(1) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) The value of all property interests of each spouse;

(3) The economic circumstances of each spouse at the time the award is to be made;

(4) The circumstances and facts which contributed to the estrangement of the parties;

(5) The duration of the marriage;

(6) The age and the physical and mental condition of the parties;

(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and any award of alimony; and

(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

(c) A monetary award made under this section may be reduced to a judgment to the extent that any part of the award is due and owing.

■ Section 3–6A–05, therefore, directs the chancellor to embark upon a three-step process, *see Harper,* 294 Md. at 79, 448 A.2d 916, and *Ward v. Ward,* 52 Md.App. 336, 339, 449 A.2d 443 (1982): (1) If a party seeks an equitable adjustment beyond the distribution of the parties' property in accordance with its legal title, the chancellor shall determine which property is marital property; (2) the chancellor must then determine the value of all marital property; and (3) the chancellor may then make a monetary award as an adjustment of the parties' equities and responsibilities, whether or not alimony is awarded. If the chancellor determines that a monetary award is to be given, he must then consider each of the nine factors found in § 3–6A–05(b) in determining a fair and equitable amount and the method of its payment.

In the instant case, the parties agreed, and the chancellor consequently found, that the real property, improved with the two houses, had a value of $156,000 at the time of trial. The chancellor then determined that since appellant had only a one-half undivided interest in the property that interest had a value of $78,000. At the time of trial, the property was subject to a mortgage balance of $16,260. Subtracting half of that figure from appellant's $78,000 interest, the chancellor determined that appellant's equity in his one-half undivided interest was approximately $70,000.

The parties also agreed that the property was worth $37,500 at the time that appellant and his mother took title to it as joint tenants. Therefore, appellant's initial nonmarital[1] contribution toward the acquisition of the property was one-half of $37,500 or $18,750. The chancellor then determined that the parties, as a marital unit, contributed $18,-

---

1. Nonmarital because it was a gift to appellant from his mother. Md.Cts. & Jud.Proc.Code Ann. § 3–6A–01(e).

750 to the property. That determination was based on the mortgage payments of $8,740 made by the marital entity and the value of the improvements they had made to the house and grounds. The chancellor thus determined that the husband's undivided one-half interest in the property was one-half marital and one-half nonmarital property. Consequently the husband's nonmarital interest in the property was worth $35,000 (one-half of $70,000) and the marital interest was also worth $35,000. The chancellor then decided to award one-half of the marital interest, $17,500, to the wife

> because I'm convinced that the marriage relationship was such that it was a 50/50 partnership and that the nonmonetary contributions that she made were equal to the monetary contributions—the monetary and non-monetary contributions that she made were equal to the monetary and non-monetary that he made, and I will award seventeen thousand five hundred dollars.

In addition to the marital property interest in the real property, the chancellor also awarded appellee a proportionate share of the insurance proceeds that were received as compensation for the loss of the parties' personal property in the 1979 fire. After the submission of a detailed exhibit listing the items of personal property that were destroyed, the chancellor found that $49,911 (39.4 percent) of the personalty was the nonmarital property of the husband, $26,696 (16.4 percent) was the nonmarital property of the wife, and $55,897 (44.2 percent) was marital property. The chancellor then proceeded to compute what part of the $53,092 received from the parties' contents insurance coverage should have been received by appellee. He determined that 38.5 percent of the proceeds,[2] or $20,440 should have

---

2. This figure was reached by adding 16.4 percent, the portion of the property that was appellee's nonmarital property, to 22.1 percent, one-half of the portion of the property that was marital property. In so doing, the chancellor arguably may have exceeded the bounds of § 3–6A–05. In effect, he based his award not only on marital property (the portion of the insurance funds traceable to the destruction of

gone to the wife. The husband contended that after the fire over $16,000 was spent by or on behalf of the wife for personal property. He also contended that much of the contents proceeds was expended in the reconstruction of the house. Therefore, he argued, by recovering part of the appreciation of the real property that was created by the contents proceeds, the wife had already been compensated for her share of the contents proceeds. The wife contended, and the chancellor agreed, that she had only received about $5,000 from the contents insurance proceeds. Thus, she was awarded $15,440, which was added to the $17,500 for a total award of $32,900.

Although appellant voices several objections to this portion of the monetary award, his two major complaints concern (1) the chancellor's conclusion that part of the real property was marital property and, (2) that having awarded appellee part of the value of the real property's appreciation, the chancellor erroneously duplicated that award by giving her a share of the contents insurance proceeds that had been expended to improve the property and thus cause the appreciation.

## A. *Marital property determination*

Appellant contends that the chancellor, in finding that part of the real property was marital property, misconstrued the holding of the Court of Appeals in *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982). That case "present[ed] the question whether real property, purchased under an installment contract and paid for in part before

---

marital property) but also on nonmarital property (the portion of the funds traceable to the destruction of appellee's nonmarital property). The chancellor included those nonmarital funds because he made a factual finding that appellant did not release those funds to appellee. While appellant does raise his "erroneous duplication" argument, *see infra* p. 365, he does not contend that the chancellor exceeded his statutory authority by basing a monetary award upon a marital property value that includes appellee's nonmarital property in appellant's possession. That contention, therefore, is not before us and we need not consider it. Md.Rule 1085.

marriage and in part during marriage, is marital property. Additionally, it present[ed] the question whether a marital residence constructed on that real property during marriage is marital property." *Id.* at 56, 448 A.2d 916. The answers to those questions necessitated an analysis of the Property Disposition in Divorce and Annulment Act, Md.Cts. & Jud. Proc.Code Ann. §§ 3–6A–01 through 3–6A–07 and case law from sister jurisdictions.

The Court "reject[ed] the inception of title theory employed by a majority of community property states and at least one equitable distribution state." *Id.* at 78–79, 448 A.2d 916. That theory provides "that real property paid for in part before marriage and in part during marriage remains the separate property of the spouse who made the payments before marriage." *Id.* at 64, 448 A.2d 916 (citations omitted). Property, under that theory, is "acquired" at the inception of title. Similarly, under the inception of title theory; improvements made during marriage on the separate real property of a spouse are the separate property of that spouse even if the improvements were made with marital funds. Rejecting that theory, the Court noted that § 3–6A–01, which defines marital property, "expressly establishes that a determination of what constitutes marital property under § 3–6A–05(a) is not dependent upon the legalistic concept of title.... Accordingly, under § 3–6A–01(e), property is not necessarily 'acquired' on the date that a legal obligation to purchase is created." *Id.* at 78–79, 448 A.2d 916.

The Court also rejected the Illinois transmutation of property theory. The Illinois courts have determined their state legislature has indicated that a preference should be given to classifying property as marital. The Illinois courts then concluded that the preference could *"best be served by presuming that the contributors of marital property to nonmarital property intended that the commingled property be treated as marital."* *Id.* at 75–76, 448 A.2d 916 [quoting *In re Marriage of Smith*, 86 Ill.2d 518, 531, 56 Ill.Dec. 693, 699, 427 N.E.2d 1239, 1245 (1981) (emphasis

added)]. The Court of Appeals, in rejecting the transmutation of property theory, determined that "[a]lthough the Illinois Act is similar in many respects to the Maryland Act, we find nothing in the Maryland Act that indicates a legislative preference for the classification of property as marital." *Harper*, 294 Md. at 79, 448 A.2d 916. Rather, the Court noted that "the language of § 3–6A–01(e), which sets forth an exclusive list of nonmarital property, indicates a legislative intent that the value of certain property not be subject to equitable distribution, and that the interests of spouses making nonmonetary contributions be protected without depriving the other spouse of nonmarital property." *Id.* at 80, 448 A.2d 916. The Court in *Harper* concluded that transmutation of nonmarital property into marital property subject to equitable distribution deprives a spouse of nonmarital property and is, therefore, contrary to that legislative intent.

> The Court of Appeals then stated
> that under the Maryland Act the appropriate analysis to be applied is the source of funds theory. Under that theory, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

*Id.*

The Court then recognized that the application of the source of funds theory requires "an interpretation that defines the term 'acquired,' appearing in § 3–6A–01(e), as the on-going process of making payment for property." *Id.*

(citation omitted). Indeed, as was recognized by the Supreme Judicial Court of Maine,

> *"acquisition" must not arbitrarily and finally be fixed on the date that a legal obligation to purchase is created. Rather, "acquisition" should be recognized as the on-going process of making payment for acquired property. Characterization of the property acquired will then depend on the source of each contribution as payments are made.*

*Id.* at 74, 448 A.2d 916 [quoting *Tibbetts v. Tibbetts,* 406 A.2d 70, 77 (Me.1979) (emphasis added) (citation omitted).]

■ In the instant case, the husband and his mother owned a piece of property, with a house thereon, as joint tenants. The property was unencumbered at the time that they became joint tenants. In order to build a second house on the property, they borrowed $25,000 and to secure that loan they mortgaged the property. The husband and wife then reduced the principal indebtedness on the loan with marital funds and expended other marital funds for improvements.

Mr. Bangs contends that

> [h]aving acquired title by gift, the $25,000.00 loan to [himself] and his mother, secured by a first mortgage on their property, did not *divest* [him] of his acquired title. Although the principal on the mortgage was paid from marital funds, the mortgage was only security for the payment of that indebtedness. The payment did not result in an "acquisition" of the property as contemplated by the source of funds rule—and the nonmarital asset was not thereby "converted" *back into* marital property. [emphasis in original].

We reject that proposition. The marital funds used to pay the mortgage were part of the purchase price for the acquisition of an improvement on the property. As such, it was a marital investment in the property. *Harper v. Harper, supra.*

██ In essence, under the source of funds theory, whenever property owned by one spouse is mortgaged or otherwise encumbered as security for a loan, the proceeds of which were used to acquire or improve the property, the property is not fully "acquired" until the encumbrance thereon is satisfied. If an encumbrance upon nonmarital property is reduced by the expenditure of marital funds, the property becomes marital property to the extent of that marital contribution. Similarly, when improvements, such as a marital residence or additions thereto, are made with marital funds upon that property, those improvements become marital property. *Harper*, 294 Md. at 81, 448 A.2d 916. Thus, "the property and the marital residence are marital in the ratio that the marital investment in the property and the residence bears to the total nonmarital and marital investment in the property." *Id.* at 81–82, 448 A.2d 916.

██ In the instant case, the chancellor found that the marital unit had made a monetary investment in the property which was equal to appellant's nonmarital investment in the property. There being more than sufficient evidence to support the finding that the husband's marital contributions and the nonmarital contribution to the acquisition of the property were equal, we shall not disturb the chancellor's factual determinations. *Kline v. Chase Manhattan Bank*, 43 Md.App. 133, 403 A.2d 395 (1979); Md.Rule 1086.

██ Having found that the marital investment and the nonmarital investment were equal in amount, the chancellor then held that each investment was entitled to an equal share of the property's appreciation in value. The source of funds rule "does not limit the [marital unit] to compensation for a share of the enhanced value of the property attributable to the expenditure of [marital] funds and efforts, but rather entitles the [marital unit] additionally to share in the increased value attributable to the normal appreciation of the property." *Harper*, 294 Md. at 69–70, 448 A.2d 916.

The chancellor, therefore, was correct in allowing the marital unit a proportionate return on its investment.

### B. *Duplication of award*

■ The chancellor based the monetary award to the wife on appreciation in the value of the marital interest in the real property and on the amount of the contents insurance proceeds which properly belonged to the wife but that she did not receive. As we noted earlier, the chancellor found that of the $53,092 of insurance proceeds, $20,440 should have been received by the wife. Having found that the wife actually received approximately $5,000, the chancellor awarded her $15,400.

Appellant contends that awarding appellee both her unreceived insurance proceeds and the appreciation in the value of the marital interest in the real property amounts to a double recovery by appellee. Alleging that the reconstruction of the large house was financed in part by $25,000 which was "provided from 'contents money and salary,' but principally from contents money," he argues that appellee was compensated for her failure to receive those proceeds by the award to her of a share of the enhanced value of the realty.

To support his contention, appellant points to the following testimony:

Q And, where did the additional—how much has been spent on the reconstruction of the Chelsea Road house?

A [appellant] As I say, about a hundred and twenty thousand dollars.

THE COURT: Where did you get the other monies?

A Well, I got that from contents money and from salary money. Whatever source I could find. Contents money, I would say, principally.

Mr. Bangs does not direct us to any evidence that shows what amount of the contents proceeds, if any, went to the reconstruction of the house. The only evidence relied upon by him in framing his argument is the above quoted testi-

mony. He did not trace the contents proceeds into the funds used for reconstruction of the house, which is necessary to his argument. It is not enough for appellant to show that the contents proceeds came into his use in some undefined way. *See* Dobbs, *Handbook on the Law of Remedies,* § 5.16 (1973). To prevail on his duplication argument, appellant had to produce definitive evidence showing that the contents insurance proceeds, or funds out of a mingled fund account, were directly expended in the reconstruction of the house. Merely showing that the contents proceeds caused his total assets to swell, and thus allowed him to finance the reconstruction, is not sufficient. *See id.* Furthermore, there was evidence to the effect that a considerable portion of the contents insurance was used to purchase new furniture that is in the possession of appellant and his girlfriend.

Any insurance proceeds attributable to appellee's nonmarital personal property that were used to rebuild the house constituted an investment by her in the acquisition of the property; any insurance proceeds attributable to marital personal property that were used to rebuild the house constituted an additional marital investment in the acquisition of the property, all of which inured to the benefit of appellant and his mother as owners of the property. It makes little difference whether the monetary award represents a share of the insurance proceeds as such or a greater share of the enhanced value of the real estate attributable to contributions of marital and appellee's nonmarital funds. In either case, appellee was equitably entitled to the award, and the result was far from inequitable to appellant.

Indeed, Mrs. Bangs may well have been shortchanged by the mathematical formula employed by the chancellor. By removing the husband's mother's undivided one-half share of the property from his considerations, the chancellor attributed only one-fourth of the property's appreciation in value to the marital contribution although the marital contribution of $18,750 actually represented one-third of the

total investment. Appellee, however, did not assert that argument, so it is not before us. Md.Rule 1085.

## C. *Other monetary award issues*

Appellant argues that the chancellor was clearly erroneous in adopting the formula by which the appellee is to share in his retirement benefits if, as and when he receives them. He argues:

> By refusing to place a "cap" or "ceiling" on the amounts which [appellee] could receive under the "if, as and when" formula used to calculate [appellee's] share of [appellant's] monthly pension payments, ... the trial court included post-divorce earnings experience in its computation.... [Appellant's] pension benefits are to be calculated on the basis of his three highest years' earnings.... Obviously, these could (or could not) include post-divorce earnings. A simple resolution would have been to provide that the payments to [appellee] pursuant to the formula could not exceed $22,500.00, i.e. the present value of the share to which the trial court found [appellee] to be entitled. Cf. *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981).

It is true that appellant's pension benefits could increase as a result of his post-divorce earnings. It is also true, however, that appellant has not directed us to any evidence which would indicate when he is planning to retire or permit a computation of the amount of his benefits when he retires. Therefore, any "cap" or "ceiling" on appellee's share of the pension funds would be based on speculation as to those matters. In the absence of such evidence, we cannot say that the chancellor was clearly erroneous, or that he abused his discretion, in adopting the above formula. A chancellor has broad discretion "when determining the proper allocation of retirement benefits between the parties...." *Deering,* 292 Md. at 130, 437 A.2d 883. One of the methods indorsed in *Deering* allows the chancellor " 'to determine a fixed percentage for [the wife] of any future payments [the husband] receives under the plan,

368

payable to her as, if, and when paid to [the husband].' " *Id.* at 131, 437 A.2d 883 [quoting *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235, 241 (1978) ] (citations omitted). That is precisely what the chancellor did in this case, and he did not abuse his discretion in "determin[ing] the appropriate percentage to which [appellee] is entitled." *Id.* (citations omitted).

 Appellant also contends that the chancellor, by awarding appellee a $32,900 monetary award *and* a share of appellant's pension funds, made two monetary awards. Citing *Grant v. Zich,* 53 Md.App. 610, 456 A.2d 75 (1983), *cert. granted,* 296 Md. 110 (1983), and *Ward v. Ward,* 52 Md.App. 336, 449 A.2d 443 (1982), he argues that "[t]he trial court failed to follow the clear and express dictates of Courts Article 3–6A–05(b)."

The chancellor, however, did not make two monetary awards. Rather, he made one monetary award, consisting of $32,900 payable now and a future sum or sums of money equal to a portion of the pension payable in the future if, as and when the pension is received by Mr. Bangs. If we were to hold otherwise, we would be in effect ruling that no "if, as, and when" pension award could ever be made if there were any other marital property in the case. Such a result, of course, would be in direct conflict with *Deering.*

 Appellant's final argument concerning the monetary award is that the chancellor erred by valuing the marital property at the time of the trial rather than at the time of the parties' separation. We have recently held, however, that the chancellor must value the property as of the date of the divorce, not at the time of the separation. *Dobbyn v. Dobbyn,* 57 Md.App. 662, 471 A.2d 1068 (1984).

## II. *Alimony*

 Appellant argues that the chancellor erred by awarding alimony in light of appellee's admitted adultery. We do not agree. When a party demonstrates an entitlement to a divorce based on "no-fault" grounds, that party

becomes eligible for an alimony award. It is then incumbent upon the chancellor to consider the relative faults of the parties in the termination of the marriage. We must remember "that the chancellor, faced in each case with a unique factual predicate, is vested with wide discretion in his decision whether to award alimony and if so, in what amount." *Wallace v. Wallace,* 290 Md. 265, 282, 429 A.2d 232 (1981).

Here, Mr. Bangs, much like Dr. Wallace, "abandoned the marital abode, and abruptly commenced an illicit relationship with another woman...." *Id.* Furthermore, appellee's post-separation adultery, like that of Mrs. Wallace, "is far from 'the sole cause for the demise of the marriage,' and indeed, was a rather incidental contributing factor." *Id.* In light of these factors, we cannot say that the chancellor abused his discretion in making the award.

Appellant's other argument concerning the alimony award is that the chancellor failed to consider the effect of the alimony award on the final monetary award. As we have previously discussed, Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05(b) provides that a chancellor must consider nine factors in determining the amount of any monetary award. That provision is mandatory; the failure of the chancellor to apply those nine statutory factors will result in the award being vacated. *Holston v. Holston,* 58 Md.App. 308, 473 A.2d 459 (1984).

Appellant contends that the chancellor must, pursuant to § 3–6A–05(b)(8), "state in his opinion the effect of all other awards and particularly alimony, upon the final marital property award. Nowhere in the chancellor's lengthy opinion in this case is there a reconciliation of the marital property award with the alimony award."

We vacated the award in *Holston,* not because the chancellor failed to mention the nine factors but because he indicated that he was ignoring some of them. The chancellor in *Holston* "concluded that it was unnecessary to regard the house as marital property or as a factor to be con-

**370**

sidered in making a monetary award since he was ordering it to be sold and the proceeds divided equally between the parties." We held, however, that

> [u]nless its value and each party's estimated share of its sale proceeds are taken into account, the court cannot properly consider *all* of the nine factors enumerated in § 3–6A–05(b) in determining a fair and equitable amount of monetary award. The nature and extent of all property owned by each spouse and the financial condition of each spouse at the time of the award are two of those statutory factors. § 3–6A–05(b)(2) and (3).

*Holston,* at 464–65.

In the instant case, the chancellor did not indicate that he was *ignoring* the alimony award when he made the monetary award. He simply did not mention it. A chancellor is not required to articulate every step in his thought processes. A judge is presumed to know the law and to properly apply it. *Hebb v. State,* 31 Md.App. 493, 499, 356 A.2d 583 (1976). That presumption is not rebutted by mere silence.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.