T.C. Memo. 2008-17

UNITED STATES TAX COURT

DWIGHT S. & ANTONINA K. PLATT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

HERBERT & CHRISTINE BANGS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 4467-06, 7221-06.     Filed January 31, 2008.

W. Randolph Shump, for petitioners in docket No. 4467-06.

Stuart Henry Levine, for petitioners in docket No. 7221-06.

Bradley C. Plovan, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge: Respondent determined the following defi-
ciencies in, and accuracy-related penalties under section

6662(a)[1] on, petitioners' respective Federal income tax for 2002:

| Petitioners | Deficiency | Accuracy-Related Penalty |
| --- | --- | --- |
| Dwight S. Platt and Antonina K. Platt | $3,531 | $706 |
| Herbert Bangs and Christine Bangs | 2,175 | 435 |

We must decide whether certain payments that petitioner Herbert Bangs (Mr. Bangs) made during 2002 to petitioner Antonina Platt (Ms. Platt) are deductible or excludable from Mr. Bangs' income for his taxable year 2002 and includible in Ms. Platt's income for her taxable year 2002.[2] We hold that they are not.

FINDINGS OF FACT

All of the facts in these cases, which the parties submitted under Rule 122, have been stipulated by the parties and are so found except as stated below.

Petitioners in the case at docket No. 4467-06, Ms. Platt and Dwight Platt (Mr. Platt), resided in Stevenson, Maryland, at the time they filed the petition in that case. Petitioners in the case at docket No. 7221-06, Mr. Bangs and Christine Bangs (Ms.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent made certain additional determinations in the respective notices of deficiency that respondent issued to petitioners in these cases, the resolution of which flows automatically from our resolution of the determinations in those respective notices that we address herein. See also infra note 33.

Bangs), resided in Ruxton, Maryland, at the time they filed the petition in that case.

On a date not disclosed by the record, Mr. Bangs and Ms. Platt were married.  At all relevant times, including while Mr. Bangs was married to Ms. Platt, Mr. Bangs participated in a pension plan (Baltimore County pension plan) maintained by his employer, Baltimore County, Maryland.  At those times, that was the only pension plan in which Mr. Bangs participated.

On March 2, 1983, Mr. Bangs and Ms. Platt divorced pursuant to a decree of divorce (divorce decree) issued by the Circuit Court for Baltimore County.  The divorce decree provided in pertinent part:

> IT IS FURTHER ORDERED, that the Defendant shall pay to the Plaintiff, directly, as permanent alimony, the sum of Three Hundred Dollars ($300) per month effective October 1, 1982, payable until the death of either party or the remarriage of the Plaintiff, which- ever shall first occur, subject to the further order of the Court.

> IT IS FURTHER ORDERED, that the Defendant shall pay to the Plaintiff, as a monetary award, the sum of Thirty-Two Thousand Nine Hundred Dollars ($32,900), which sum shall be payable within 90 days of February 1, 1983.[3]

> IT IS FURTHER ORDERED, that the aforesaid monetary award shall be reduced to judgment on May 1, 1983 and shall draw interest at the legal rate from such date.

> *       *       *       *       *       *       *

---

[3]We shall refer to the second-ordered paragraph quoted above as the divorce decree $32,900 lump-sum payment provision.

IT IS FURTHER ORDERED, that with respect to the Defendant's pension, the Defendant shall pay to the Plaintiff, if, as, and when he receives each pension payment, that sum which is determined in accordance with the following formula:

50 percent X (12 years and seven months of marriage ÷ by total years of employment).[4]

IT IS FURTHER ORDERED, that if the Defendant voluntarily takes his pension as a lump sum, either before or after retirement, then Defendant shall, upon receipt of * * * said lump sum, pay to the Plaintiff the sum of Twenty-two Thousand Five Hundred Dollars ($22,500), with simple interest at the rate of ten (10) percent from July 1, 1983, to the date of payment. [Reproduced literally.]

During 2002, Mr. Bangs received monthly payments from the Baltimore County pension plan.  Pursuant to the divorce decree provision in question, shortly after receiving each such monthly payment, Mr. Bangs made the following monthly payments totaling $8,803.87[5] (monthly payments at issue) on the dates indicated by electronic transfers from a joint checking account that he and Ms. Bangs maintained to a checking account of Ms. Platt:

---

[4]We shall refer to the fourth-ordered paragraph quoted above as the divorce decree provision in question.

[5]The parties stipulated that during 2002 Mr. Bangs paid to Ms. Platt $8,883 pursuant to the divorce decree provision in question.  That stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it.  See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989).  The record establishes, and we have found, that during 2002 Mr. Bangs paid to Ms. Platt $8,803.87 pursuant to the divorce decree provision in question.

| Date of Payment | Amount of Payment |
|---|---|
| 01/14/2002 | $728.91 |
| 02/13/2002 | 728.91 |
| 03/13/2002 | 728.91 |
| 04/15/2002 | 728.91 |
| 05/13/2002 | 728.91 |
| 06/13/2002 | 728.91 |
| 07/15/2002 | 728.91 |
| 08/15/2002 | 740.30 |
| 09/16/2002 | 740.30 |
| 10/15/2002 | 740.30 |
| 11/15/2002 | 740.30 |
| 12/16/2002 | 740.30 |

Mr. Bangs and Ms. Bangs timely filed Form 1040, U.S. Individual Income Tax Return (Form 1040), for their taxable year 2002 (Mr. Bangs' return).[6]  In that return, Mr. Bangs claimed a deduction of $8,883[7] for alimony.  Mr. Bangs did not issue to Ms. Platt and did not file with the Internal Revenue Service any Form 1099 for a nominee distribution with respect to those payments.

On January 18, 2006, respondent issued to Mr. Bangs a notice of deficiency with respect to his taxable year 2002 (notice for Mr. Bangs' taxable year 2002).  In that notice, respondent disallowed the alimony deduction that Mr. Bangs claimed in Mr. Bangs' return.  In the notice for Mr. Bangs' taxable year 2002,

---

[6]For convenience, we shall generally refer hereinafter only to Mr. Bangs, and not to Ms. Bangs.

[7]See supra note 5.  The record does not disclose why Mr. Bangs deducted as alimony $79.13 in excess of the $8,803.87 that he paid to Ms. Platt during that year pursuant to that divorce decree provision.

respondent also determined that Mr. Bangs is liable for his taxable year 2002 for the accuracy-related penalty under section 6662(a).

Mr. Platt and Ms. Platt timely filed Form 1040 for their taxable year 2002.[8]  In that return, Ms. Platt did not include in income the $8,803.87[9] that she received from Mr. Bangs during 2002.

On January 18, 2006, respondent issued to Ms. Platt a notice of deficiency with respect to her taxable year 2002 (notice for Ms. Platt's taxable year 2002).  In that notice, respondent determined that Ms. Platt received $8,883[10] of alimony that is includible in her income for that year.  In the notice for Ms. Platt's taxable year 2002, respondent also determined that Ms. Platt is liable for her taxable year 2002 for the accuracy-related penalty under section 6662(a).

## OPINION

The parties submitted these cases fully stipulated under Rule 122.  That the parties submitted these cases under that Rule does not affect who has the burden of proof or the effect of a

---

[8]For convenience, we shall generally refer hereinafter only to Ms. Platt, and not to Mr. Platt.

[9]See _supra_ note 5.

[10]See _supra_ note 5.

failure of proof.[11]  Rule 122(b); <u>Borchers v. Commissioner</u>, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

In support of his argument that the monthly payments at issue are deductible or excludable from his income and includible in Ms. Platt's income for the taxable year 2002, Mr. Bangs advances several arguments.  We first address Mr. Bangs' argument that the monthly payments at issue constitute alimony under section 71 and are deductible under section 215(a).  Ms. Platt and respondent take the position that those payments are not alimony under that section.[12]

In advancing their respective positions on brief as to whether the monthly payments at issue constitute alimony under section 71, Mr. Bangs and Ms. Platt rely on section 71 as amended by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 422(a), 98 Stat. 795 (amended section 71).  Respondent argues that amended section 71 does not apply to those payments. We agree with respondent.[13]

---

[11]The parties do not address sec. 7491(a).  In any event, we need not decide whether the burden of proof shifts to respondent under that section.  That is because resolution of the issue presented here does not depend on who has the burden of proof.

[12]Respondent in each of these cases is in essence a stake-holder.  On brief, however, respondent agrees with Ms. Platt's position.

[13]DEFRA also amended sec. 215 (amended sec. 215).  DEFRA, Pub. L. 98-369, sec. 422(b), 98 Stat. 797.  That amendment applies with respect to (1) divorce and separation instruments
(continued...)

Amended section 71 applies with respect to (1) divorce and separation instruments executed after December 31, 1984, and (2) any such instruments executed before January 1, 1985, but modified on or after that date if the modification expressly provides that amended section 71 applies to such modification. DEFRA sec. 422(e), 98 Stat. 798.

In his reply brief, Mr. Bangs argues that section 71 before its amendment by DEFRA does not apply in the instant cases because he and Ms. Platt "effectively stipulated" that amended section 71 applies.[14] We reject that argument. We note initially that although Mr. Bangs and Ms. Platt take the position on brief that amended section 71 applies in these cases, they did not stipulate that that section applies. Even if Mr. Bangs and

---

[13](...continued)
executed after Dec. 31, 1984, and (2) any such instruments executed before Jan. 1, 1985, but modified on or after that date if the modification expressly provides that amended sec. 215 applies to that modification. DEFRA sec. 422(e), 98 Stat. 798. The parties do not address whether sec. 215 before its amendment by DEFRA or amended sec. 215 applies in these cases. On the record before us, we hold that sec. 215 before its amendment by DEFRA, and not amended sec. 215, applies.

[14]In his reply brief, Mr. Bangs also argues that amended section 71 applies because "the Commissioner made the assessments against both sets of taxpayers in order to avoid being 'whipsawed'". We reject that argument. That respondent made the respective determinations at issue in order to avoid being whipsawed is irrelevant to resolving whether sec. 71 before its amendment by DEFRA or amended section 71 applies in these cases.

In her reply brief, Ms. Platt does not address respondent's argument that sec. 71 before its amendment by DEFRA, and not amended section 71, applies in these cases.

Ms. Platt had stipulated that amended section 71 applies in these cases, the Court is not bound by stipulations of law. See, e.g., Thoburn v. Commissioner, 95 T.C. 132, 144 n.12 (1990).

The Circuit Court for Baltimore County issued the divorce decree on March 2, 1983. The record does not establish that that court modified that decree after that date. On the record before us, we hold that section 71 before its amendment by DEFRA, and not amended section 71, applies in determining whether the monthly payments at issue constitute alimony.

In his reply brief, Mr. Bangs states: "We would agree that if the pre-Tax Reform Act of 1984 version of I.R.C. 71 [section 71 before its amendment by DEFRA] is applicable, the Disputed Payments [monthly payments at issue] do not constitute alimony." Mr. Bangs thus concedes that if we were to hold that section 71 before its amendment by DEFRA applies, which we have, the monthly payments at issue do not constitute alimony under that section. Based on Mr. Bangs' concession, we hold that the monthly payments at issue do not constitute alimony under section 71 before its amendment by DEFRA and are not deductible under section 215(a) before its amendment by DEFRA.[15]

We turn now to Mr. Bangs' argument that Ms. Platt was the owner of an interest in the Baltimore County pension plan since the divorce decree ordered him to pay her "if, as, and when he

---

[15]See supra note 13.

receives each pension payment, that sum which is determined in accordance with the following formula: 50 percent X (12 years and seven months of marriage ÷ by total years of employment)." As a result, according to Mr. Bangs, the monthly payments at issue are excludable from his income and includible in Ms. Platt's income for the taxable year 2002. Ms. Platt and respondent argue that Ms. Platt did not own an interest in the Baltimore County pension plan.[16] As a result, according to Ms. Platt and respondent, the monthly payments at issue are includible in Mr. Bangs' income and excludable from her income for the taxable year 2002.

Petitioners in each of these cases agree, and respondent does not dispute, that the Baltimore County pension plan constitutes a qualified pension plan within the meaning of section 401(a).[17] Moreover, none of the parties disputes that the Balti-

----

[16]See supra note 12.

[17]Sec. 401(a) provides in pertinent part:

SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS.

(a) Requirements for Qualification.--A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section--

(1) if contributions are made to the trust by such employer, or employees, or both * * * for the purpose of distributing to such employees or their

(continued...)

more County pension plan constitutes a governmental plan as defined in section 414(d).[18]  Inexplicably, however, none of the parties addresses section 402(a) in advancing their respective positions as to whether the monthly payments at issue are excludable from Mr. Bangs' income and includible in Ms. Platt's income for the taxable year 2002.[19]  That section governs the

_____

[17](...continued)
        beneficiaries the corpus and income of the fund
        accumulated by the trust in accordance with such
        plan;

             (2) if under the trust instrument it is im-
        possible, at any time prior to the satisfaction of
        all liabilities with respect to employees and
        their beneficiaries under the trust, for any part
        of the corpus or income to be (within the taxable
        year or thereafter) used for, or diverted to,
        purposes other than for the exclusive benefit of
        his employees or their beneficiaries * * *

All references hereinafter to a qualified pension plan are to a
qualified pension plan within the meaning of sec. 401(a).

    [18]Sec. 414(d) defines the term "governmental plan" as "a
plan established and maintained for its employees by the Govern-
ment of the United States, by the government of any State or
political subdivision thereof, or by any agency or instrumental-
ity of any of the foregoing."  All references hereinafter to a
governmental plan are to a governmental plan within the meaning
of sec. 414(d).

    [19]Instead, in support of their respective positions as to
whether the monthly payments at issue are excludable from Mr.
Bangs' income and includible in Ms. Platt's income for the
taxable year 2002, the parties rely on sec. 61(a)(11) and on
cases (e.g., Pfister v. Commissioner, T.C. Memo. 2002-198, affd.
359 F.3d 352 (4th Cir. 2004), and Witcher v. Commissioner, T.C.
Memo. 2002-292) in which the Court based its respective holdings
on that section.  Although sec. 61(a)(11) provides the general
rule that gross income includes income derived from pensions,
Congress provided a special rule in sec. 402(a) with respect to
                                                (continued...)

taxation of distributions from a qualified pension plan. Section 402(a) provides that any amount distributed from a qualified pension plan, including a governmental plan, is generally taxable to the distributee under such a plan.

In Darby v. Commissioner, 97 T.C. 51 (1991), the Court addressed the meaning of the term "distributee" in section 402(a) in the context of a qualified pension plan, which was not a governmental plan (or any other qualified plan) that was not subject to the so-called spendthrift provisions of section 401(a)(13).[20] The Court held there that the term "distributee" in section 402(a) ordinarily means the participant or the beneficiary who is entitled under such a plan to receive a distribution. Darby v. Commissioner, supra at 58. In so holding,[21] the

_____

[19](...continued)
distributions from qualified pension plans. See Darby v. Commissioner, 97 T.C. 51, 58 (1991). Unlike the instant cases, Pfister and Witcher did not involve qualified pension plans. Those cases involved Federal military retirement programs that are subject to Federal statutes that do not apply in the instant cases. The parties' reliance on sec. 61(a)(11) and on Pfister and Witcher is misplaced.

[20]All references hereinafter to the spendthrift provisions are to the provisions of sec. 401(a)(13) that, with certain exceptions, prohibit the assignment and alienation of benefits under a qualified pension plan.

[21]The rationale on which the Court based its holding in Darby v. Commissioner, supra, related in large part to Congress' addition to the Code in 1984 of the provisions relating to qualified domestic relations orders (QDRO provisions). Those provisions include sec. 414(p), which defines the term "qualified domestic relations order" (QDRO), and sec. 402(e)(1)(A) (origi-
(continued...)

Court rejected the taxpayer's argument that the term

"distributee" in section 402(a) means the owner of an interest in

a qualified pension plan.  Id. at 66.

_____

[21](...continued)
nally enacted as sec. 402(a)(9)), which governs the taxation of
distributions or payments that are made pursuant to a QDRO.  As
discussed below, when Congress enacted the QDRO provisions in
1984, those provisions did not apply to governmental plans that
are not subject to the spendthrift provisions of sec. 401(a)(13).
See secs. 414(p)(9), 401(a); sec. 1.401(a)-13(a), Income Tax
Regs.; see also H. Rept. 101-247, at 1443 (1989).

The legislative history of the QDRO provisions enacted in
1984 states in pertinent part:

> Generally, under present law, benefits under a
> pension, profit-sharing, or stock bonus plan (pension
> plan) are subject to prohibitions against assignment or
> alienation (spendthrift provisions. [sic]) * * *

> Several cases have arisen in which courts have
> been required to determine whether the * * * spend-
> thrift provisions apply to family support obligations
> (e.g., alimony, separate maintenance, and child support
> obligations). * * * There is a divergence of opinion
> among [those courts] * * *.

    *      *      *      *      *      *      *

#### Reasons for Change

> The committee believes that the spendthrift rules
> should be clarified by creating a limited exception
> that permits benefits under a pension, etc., plan to be
> divided under certain circumstances.  In order to
> provide rational rules for plan administers [sic], the
> committee believes it is necessary to establish guide-
> lines for determining whether the exception to the
> spendthrift rules applies. * * *

S. Rept. 98-575, at 18-19 (1984), 1984-2 C.B. 447, 456.

A question arises as to whether the definition of the term "distributee" in Darby v. Commissioner, supra, applies in the instant cases, where the qualified pension plan in question is a governmental plan that is not subject to the spendthrift provisions of section 401(a)(13).[22] We need not resolve that question. That is because, regardless of whether in the context of a governmental plan, such as the qualified pension plan involved in the instant cases, the term "distributee" in section 402(a) means the participant or the beneficiary under such a plan, as the Court held in Darby, or the owner of such a plan, as the parties apparently argue here, on the record before us, we find that for purposes of section 402(a) Mr. Bangs, and not Ms. Platt, was the distributee under the Baltimore County pension plan.

The parties do not dispute (1) that during the year at issue Mr. Bangs, and not Ms. Platt, was a participant under the Baltimore County pension plan and (2) that during that year Ms. Platt was not a beneficiary of an interest in that pension plan. We thus consider only the parties' disagreement over whether Ms.

---

[22]In Powell v. Commissioner, 101 T.C. 489 (1993), the Court set forth an exception to the general definition in Darby v. Commissioner, supra, of the term "distributee" in sec. 402(a). The Court held in Powell that that definition did not apply in a situation governed by community property laws where the former spouse's "rights were acquired by her directly at the outset and did not represent a transfer to her of rights which had previously accrued to [her husband]". Id. at 497-498. Accordingly, the Court further held in Powell that the former spouse was a "distributee" under sec. 402(a) who was "taxable on her share of the pension benefits" in question. Id. at 499.

Platt was the owner of an interest in the Baltimore County pension plan.

In support of their respective positions as to whether Ms. Platt was the owner of an interest in the Baltimore County pension plan, the parties rely on the divorce decree provision in question. That provision requires Mr. Bangs to pay an amount determined pursuant to a formula stated therein "if, as, and when" he receives a payment from the Baltimore County pension plan. Contrary to Mr. Bangs' argument, the divorce decree provision in question does not provide that Ms. Platt is the owner of an interest in that plan.[23] Nor has that provision been construed to do so. In fact, the Court of Special Appeals of Maryland concluded that the divorce decree provision in question granted nothing more than a monetary award to Ms. Platt. See Bangs v. Bangs, 475 A.2d 1214, 1223 (Md. Ct. Spec. App. 1984).

In Bangs v. Bangs, supra, Mr. Bangs appealed from the divorce decree involved in these cases. In that appeal, Mr. Bangs did not argue, as he does here, that the divorce decree provision in question provided that Ms. Platt was the owner of an

---

[23]As discussed supra note 19, Mr. Bangs' reliance on Pfister v. Commissioner, T.C. Memo. 2002-198, is misplaced because that case involved a Federal military retirement program that was subject to Federal statutes that do not apply in the instant cases. Mr. Bangs' reliance on Pfister also is misplaced because, unlike the divorce decree involved in the instant cases, the divorce decree involved in Pfister provided that the taxpayer in that case was to "be owner of, and receive, one-half of husband's disposable retired or retainer pay". Id.

interest in the Baltimore County pension plan.  Instead, he argued (1) that the Circuit Court for Baltimore County granted Ms. Platt two monetary awards consisting of the payment ordered under the divorce decree $32,900 lump-sum payment provision[24] and the payments ordered under the divorce decree provision in question[25] and (2) that the Circuit Court for Baltimore County erred by refusing to place a "cap" or "ceiling" on the latter payments.  Id. at 1222-1223.

The Court of Special Appeals of Maryland agreed with Mr. Bangs that the payments ordered under the divorce decree $32,900 lump-sum payment provision and under the divorce decree provision in question were in the nature of a monetary award, id. at 1223, but disagreed with Mr. Bangs that the Circuit Court for Baltimore County had granted Ms. Platt two separate monetary awards under

---

[24]The divorce decree $32,900 lump-sum payment provision provided:

> IT IS FURTHER ORDERED, that the Defendant shall pay to the Plaintiff, as a monetary award, the sum of Thirty-Two Thousand Nine Hundred Dollars ($32,900), which sum shall be payable within 90 days of February 1, 1983.

[25]The divorce decree provision in question provided:

> IT IS FURTHER ORDERED, that with respect to the Defendant's pension, the Defendant shall pay to the Plaintiff, if, as, and when he receives each pension payment, that sum which is determined in accordance with the following formula:

> 50 percent X (12 years and seven months of marriage ÷ by total years of employment).

those two provisions, id.  The Court of Special Appeals of
Maryland held that the Circuit Court for Baltimore County granted
Ms. Platt only one monetary award consisting of the payment
ordered under the divorce decree $32,900 lump-sum payment provi-
sion and the payments ordered under the divorce decree provision
in question.  Id. at 1222-1223.  The Court of Special Appeals of
Maryland also disagreed with Mr. Bangs' argument that the Circuit
Court for Baltimore County erred by refusing to place a "cap" or
"ceiling" on the latter payments.  Id. at 1223.  According to the
Court of Special Appeals of Maryland, the Circuit Court for
Baltimore County had broad discretion and did not abuse that
discretion by determining a fixed percentage for Ms. Platt of the
future payments that Mr. Bangs was to receive from the Baltimore
County pension plan.  Id. at 1222-1223.

The law of Maryland in effect at the time that the Circuit
Court for Baltimore County issued the divorce decree involved in
the instant cases provides further support for our finding that
the divorce decree provision in question does not provide that
Ms. Platt is the owner of an interest in the Baltimore County
pension plan.[26]  The law of Maryland in effect at that time, Md.

---

[26]As discussed supra note 19, Mr. Bangs' reliance on Witcher
v. Commissioner, T.C. Memo. 2002-292, is misplaced because that
case involved a Federal military retirement program that was
subject to Federal statutes that do not apply in the instant
cases.  Mr. Bangs' reliance on Witcher also is misplaced because,
unlike the State law involved in the instant cases, the State law
(continued...)

Code Ann., Cts. & Jud. Proc. sec. 3-6A-05 (1980 & Supp. 1983)(repealed and recodified as Md. Code Ann., Fam. Law sec. 8-205 by Acts 1984, ch. 296, secs. 1 and 2),[27] did not authorize Maryland courts to transfer ownership of an interest in a pension plan as part of a divorce settlement. See generally Klingenberg v. Klingenberg, 675 A.2d 551, 555-556 (Md. 1996). It was not until 1986 that the legislature of the State of Maryland authorized Maryland courts to transfer ownership of an interest in a "pension, retirement, profit sharing, or deferred compensation

---

[26](...continued)
involved in Witcher authorized the court that issued the divorce decree involved in that case to award an ownership interest in a military pension as part of a divorce settlement. Id.

[27]The law of Maryland in effect at the time that the Circuit Court for Baltimore County issued the divorce decree involved in the instant cases, Md. Code Ann., Cts. & Jud. Proc. sec. 3-6A-05 (1980 & Supp. 1983)(repealed and recodified as Md. Code Ann., Fam. Law sec. 8-205 by Acts 1984, ch. 296, secs. 1 and 2), provided in pertinent part:

[Sec.] 3-6A-05. Monetary award.

    \*      \*      \*      \*      \*      \*      \*

    (b) The court shall determine the value of all marital property. After making the determination, the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. * * *

In Deering v. Deering, 437 A.2d 883, 890 (Md. 1981), the Court of Appeals of Maryland held under the above-quoted provision that "a spouse's pension rights, to the extent accumulated during the marriage, constitute a form of 'marital property'".

plan" as part of a divorce settlement.  Md. Code Ann., Fam. Law sec. 8-205(a)(2)(i)(West 2007).[28]  See generally <u>Klingenberg v. Klingenberg</u>, <u>supra</u> at 555-556.

On the record before us, we find that Ms. Platt was not the owner of an interest in the Baltimore County pension plan.  On that record, we further find that, regardless of whether in the context of a governmental plan, such as the qualified pension plan involved in the instant cases, the term "distributee" in section 402(a) means the participant or the beneficiary under such a plan, as the Court held in <u>Darby v. Commissioner</u>, 97 T.C.

---

[28]Md. Code Ann., Fam. Law, sec. 8-205(a)(West 2007) provides in pertinent part:

> (a)(1) * * * after the court determines which property is marital property, and the value of the marital property, the court may transfer ownership of an interest in property described in paragraph (2) of this subsection, grant a monetary award, or both, as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

> (2) The court may transfer ownership of an interest in:

>> (i) a pension, retirement, profit sharing, or deferred compensation plan, from one party to either or both parties;

>> (ii) subject to the consent of any lienholders, family use personal property, from one or both parties to either or both parties; and

>> (iii) subject to the terms of any lien, real property jointly owned by the parties and used as the principal residence of the parties when they lived together * * *

at 58, or the owner of an interest in such a plan, as the parties apparently argue here, for purposes of that section, Mr. Bangs, and not Ms. Platt, was the distributee under the Baltimore County pension plan, unless the divorce decree qualifies under section 414(p) as a QDRO.

The final argument that Mr. Bangs advances in support of his position in these cases and that we consider now is that the divorce decree involved in these cases qualifies under section 414(p) as a QDRO. If the divorce decree were to qualify as such, Ms. Platt would be an alternate payee[29] under the Baltimore County pension plan. In that event, she would be treated for purposes of section 402(a) as the distributee under that plan of the payments to which she was entitled pursuant to the divorce decree provision in question. See sec. 402(e)(1)(A).

We reject Mr. Bangs' argument that the divorce decree qualifies under section 414(p) as a QDRO.[30] The QDRO provisions

---

[29]Sec. 414(p)(8) defines the term "alternate payee" as "any spouse, former spouse, child or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant."

[30]We note that the parties stipulated (QDRO stipulation): "No 'qualified domestic relations order' ('QDRO') has been issued to either Antonina K. Platt or Herbert Bangs either on March 2, 1983 or at any time thereafter." None of the parties argues that the QDRO stipulation means that the divorce decree involved in the instant cases may not qualify under sec. 414(p) as a QDRO. We shall independently address whether that divorce decree so qualifies.

that Congress enacted in 1984 did not apply to governmental plans.  See sec. 414(p)(9); see also supra note 21.  In 1989, Congress added section 414(p)(11) to the Code.[31]  Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. 101-239, sec. 7841(a)(2), 103 Stat. 2427-2428.  Section 414(p)(11) provides that "a distribution or payment from a governmental plan * * * shall be treated as made pursuant to a qualified domestic relations order if it is made pursuant to a domestic relations order which meets the requirement of clause (i) of paragraph (1)(A)" of section 414(p).[32]  Section 414(p)(11) applies only with respect to transfers of marital interests in governmental plans that occur after December 19, 1989.  OBRA sec. 7841(a)(3), 103 Stat. 2428.

---

[31]Congress added sec. 414(p)(11) to the Code in order "to conform generally [the tax rules relating to transfers of interests in a governmental plan] to the tax rules applicable to other qualified plans pursuant to the Retirement Equity Act."  H. Rept. 101-247, at 1443 (1989).

[32]Generally, a domestic relations order qualifies under sec. 414(p) as a QDRO if that order (1) creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, sec. 414(p)(1)(A)(i); (2) clearly specifies certain facts, such as the name and last known mailing address of the participant and the name and mailing address of the alternate payee, sec. 414(p)(2); and (3) does not alter the amount or form of the plan benefits, sec. 414(p)(3).  With respect to governmental plans, however, a domestic relations order qualifies under sec. 414(p) as a QDRO if that order creates or recognizes the existence of an alternate payee's right, or assigns to an alternate payee the right, to receive all or a portion of the benefits payable with respect to a participant under a plan.  See sec. 414(p)(11).

The Circuit Court for Baltimore County issued the divorce decree involved in the instant cases on March 2, 1983. On the record before us, we hold that section 414(p)(11) does not apply to that divorce decree. On that record, we further hold that the divorce decree involved in the instant cases does not qualify under section 414(p) as a QDRO and that Ms. Platt is not an alternate payee for purposes of section 402(a). Accordingly, we further hold that Ms. Platt is not to be treated as a distributee under the Baltimore County pension plan of the payments to which she was entitled pursuant to the divorce decree provision in question. See sec. 402(e)(1)(A).

Based upon our examination of the entire record before us, we find that the monthly payments at issue are not deductible or excludable from Mr. Bangs' income and are not includible in Ms. Platt's income for the taxable year 2002.[33]

We have considered all of the parties' respective contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

---

[33]On brief, respondent does not advance any arguments in support of the respective determinations under sec. 6662(a) in the notice for Mr. Bangs' taxable year 2002 and in the notice for Ms. Platt's taxable year 2002. We conclude that respondent has abandoned those determinations. Assuming arguendo that we had not concluded that respondent abandoned those respective determinations, on the record before us, we find that neither petitioners in the case at docket No. 4467-06 nor petitioners in the case at docket No. 7221-06 are liable for the accuracy-related penalty under sec. 6662(a).

To reflect the foregoing,

> Decision will be entered for petitioners in docket No. 4467-06.

> Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty under section 6662(a) in docket No. 7221-06.